J. C. KING, R. B. King and King Trailer and Equipment Company, Inc., a corporation,

v.

**COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK.**

Civ. A. No. 2–619.

United States District Court
N. D. Texas,
Amarillo Division.

Oct. 28, 1969.

Robert Sanders, Miller, Sanders, Baker & Miller, Amarillo, Tex., for plaintiffs.

Wayne Sturdivant, Gibson, Ochsner, Adkins, Harlan & Hankins, Amarillo, Tex., for defendant.

**10**

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above entitled and numbered cause came on to be heard by the Court, without a jury, on the 20th day of October, 1969. Plaintiffs had incurred property damage to various trailers and other equipment owned by them, which damage occurred at the time that an elevated water storage tank was being painted in Amarillo, Texas, in the spring of 1964. Paint had been blown from the site of the painting operations onto the equipment owned by Plaintiffs. The painting contractor was one Douglas Elzy, and his principal superintendent in charge of the job was Mr. David D. Nobley. The Defendant in this case was the insurance carrier for the paint contractor. After investigating the incident, Defendant had denied liability for any of the acts in connection with the incident. Subsequently, in July of 1964, Plaintiffs obtained a judgment against Douglas Elzy, the paint contractor, in the State District Court of Dallas County, Texas, in which a jury returned a verdict of $30,000.00 in favor of the Plaintiffs in this case. The Plaintiffs brought this suit against the Defendant insurance company as a third-party beneficiary on the insurance contract.

The principal witness in this suit was Mr. Nobley, the superintendent in charge of the job for the paint contractor. His depositions were taken on two different occasions, and attached to the first deposition was a recorded question-and-answer statement, taken before a reporter by the attorney for Defendant, but unsworn to, and which was referred to and received by this Court as an exhibit to the first deposition.

This Memorandum Opinion shall constitute the Findings of Fact and the Conclusions of Law of this Court.

It appears from the testimony that Mr. Elzy contracted to paint a water tower owned by the City of Amarillo, and that he employed David D. Nobley as his superintendent to generally oversee the work. During the early part of the job Nobley informed his employer, Elzy, that they would probably encounter several difficulties, including high winds, in completing the job and he even urged his employer to forfeit the job. Elzy, however, told Nobley to go ahead with the work.

Also introduced into evidence was a daily log of the work on this particular job that had been prepared as a part of the regular business records of the firm of Freese and Nichols, consulting engineers. These logs show that the painting on the outside of the tanks commenced as early as April 6, 1964, and that on Friday, April 17, 1964, the Plaintiffs informed Mr. Nobley of the paint damage to the trailers which were located on the tract to the north of the water tank. These same records show that on April 27, 1964, the insurance adjusters for the paint contractor were on the job talking to the claimants about this damage. Mr. King testified that he complained of his damage to Mr. Nobley the first day that he noticed paint on his property, which is indicated to be April 17th, some ten days after the first outside painting was commenced. From the beginning, Mr. Nobley was aware of the problems being encountered because of high winds and the daily logs show that during the course of the operations he shut down on several occasions because of the high winds. Realizing the problems involved, he attempted to solve them by painting with the wind or in such a fashion that the wind would blow paint away from the vehicles. He had also personally investigated on the ground during some of the painting operations, and had determined at that time that the paint was not being blown over to Plaintiffs' property.

Defendant's contract of insurance with the paint contractor provided coverage for all sums which the paint contractor should become legally obligated to pay as damages because of injury to or destruction of property including the loss of use thereof caused by accident. This policy further provides that when an accident occurs written notice shall

be given by and on behalf of the insured (paint contractor) to the company or any of its authorized agents as soon as practicable.

■ Defendant's first defense in this case is based upon the above notice requirement in the contract of insurance. It is Defendant's contention that the insured (the paint contractor) did not comply with the notice provisions in that written notice was not given as soon as practicable and that the particulars of the incident were not enumerated. Plaintiffs claim that Defendant waived these notice requirements. Under Texas law, it is established that the notice provisions of an insurance contract can be waived. New Amsterdam Casualty Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56 (1945); State Farm Mutual Auto. Ins. Co. v. Hinojosa, 346 S.W.2d 914 (Tex.Civ.App., Waco, 1961, writ ref. n. r. e.). However, Texas Courts have rarely been presented with a factual situation that would constitute waiver. See, for example, Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95 (1955). To present an issue of waiver, the evidence must warrant an inference that a party, with full knowledge of the facts, did or failed to do something inconsistent with an intention to exercise its rights. State Farm Mutual v. Hinojosa, *supra*. In this case, after considering all the evidence presented, the Court finds that Defendant waived the notice requirements in the insurance contract. The facts established that, after being notified of the damage on April 17, 1964, Nobley called his employer who asked him to contact the General Adjustment Bureau in Amarillo, Texas, the agent of Defendant insurance company. Nobley then contacted the Adjustment Bureau on the day of the damage or a few days later by telephone. Sufficient particulars were given to the claims agents so that they could commence their investigation, which in fact they did, obtaining written statements and interviewing those who had knowledge of the facts. From the evidence, it was established that the General Adjustment Bureau conducted a large part of its investigation within thirteen to thirty days after the damage first was reported. It cannot be exactly determined from the testimony as to the date when claims investigation began, but it is undisputed that the investigating claims agent received notice, given by telephone, of this damage, and further that Plaintiffs in this case also called the supervising claims agent for Defendant in Dallas asking for some relief on this claim. The evidence is clear that the claims agent, acting as the investigating agency for Defendant insurance company, made an investigation of this claim at least as early as April 30, 1964, or perhaps even earlier. Investigation continued through June 16, 1964, when Defendant insurance company obtained a non-waiver agreement from the paint contractor, Douglas B. Elzy.

From these facts, the Court determines that there was clearly waiver of the notice provisions. Oral notice was given immediately after damage was discovered. The agents of Defendant conducted a thorough preliminary investigation which fully disclosed all the particulars of the incident. After this occurred, Defendant procured a non-waiver agreement. If Defendant had procured the non-waiver agreement during the same time period it began the investigation in April of 1964, as the insurance company did in State Farm Mutual v. Hinojosa, *supra*, a question of waiver would not exist. However, in this case, the non-waiver agreement was procured almost two months after the investigation began. Under these circumstances, waiver is present.

■■ Defendant's second defense in this case is based upon the provision in the contract requiring damages or losses to be "caused by accident." This defense is based upon language in Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Co., 416 S.W.2d 396 (Tex.1967), where the Texas Supreme Court stated:

"We construe the term 'accident' as used in the policy to include negligent

acts of the insured causing damage which is undesigned and unexpected." Defendant urges that this language must mean, conversely, that the term "accident" does not include negligent acts of the insured *causing damage which is designed and expected*. Plaintiffs answer that the questions of negligence and damage were resolved by the State Court and should not be re-litigated here. Defendant recognizes the authority and binding nature of the State Court judgment but requests the opportunity to litigate the defense of "accident" in this Court. Defendant's request is granted since it is clear from an examination of the State Court judgment that no determination was made as to whether the damage caused by insured's negligent acts was expected and designed. In this case, Plaintiffs, the injured parties, who have recovered judgment against the insured, stand in the shoes of the insured and are subject to the same defenses the insurer could have raised against the insured had the insured paid the judgment. See Preferred Acc. Ins. Co. of New York v. Grasso, 186 F.2d 987, 23 A.L.R.2d 1234 (2d Cir.1951); American Surety Co. of New York v. Coblentz, 381 F.2d 185 (5th Cir.1967).

The Court therefore must decide, on the facts, whether the negligent acts of insured caused damage which was unexpected and undesigned. From the evidence presented, this Court finds that the damage caused in this case was unexpected and undesigned and that the damage was caused by accident as required by the contract of insurance. In this case, the Court permitted an introduction, over the objection of Plaintiffs, of the question-and-answer statement of David Nobley, not taken under oath, by the attorney for Defendant as well as the first deposition taken of Nobley wherein this question-and-answer statement was referred to on several occasions. Apparently counsel for Defendant relied strongly on the question-and-answer statement in supporting its contention that this was a designed and ex-

pected act as distinguished from an accidental act. With this we cannot agree. The witness Nobley on several occasions stated that if the wind was blowing over toward the trailers, he would knock off work, and even refers to the fact that he would work at night apparently in order to avoid the winds, and he stated that "we didn't paint when the wind was blowing directly on his property, we knocked off." Also, in the question-and-answer statement, Nobley made the following replies to the following questions:

Question: And you could see it blowing over on the Texas Highway Department, I believe, wasn't it?

Answer: No. Actually, we didn't think it was getting over there on the Highway Department. We did think it might go over on the King Trailer. We did go over and check it, it wasn't getting over there at the time because the wind was blowing away from the property.

Question: I see. The first time you went over to see Mr. King, you had done some work and it hadn't blowed over there yet?

Answer: Actually, Mr. King didn't know I was over there inspecting it. But after it didn't blow over there, with the brushes, see, we started off brushing the first three or four days, and the roller, only. And after that I didn't pay no more attention to it, it wasn't getting over there, using rollers and brushes. But after three or four days, King come over and told me there was paint all over the thing.

From this dialogue, it is clear that Nobley thought paint might get on King's equipment and checked after the first day of painting to see if, in fact, paint did get on it. He observed that no paint was dropping on Plaintiffs' equipment and continued. Further testimony shows that, although Nobley and his crew tried to paint when the wind was blowing away from Plaintiffs' equipment, the configuration of the water tower created such a turbulence that the

wind would be "blowing every direction up on the bowl."

The Court is of the opinion that these statements by Nobley and the other exhibits and testimony in this case clearly indicate that the damage in this case was undesigned and unexpected. Damage certainly could not be designed when Nobley and his crew tried to paint only when the wind was blowing away from Plaintiffs' equipment. Further, damage surely could not be expected when Nobley examined the situation the first day after painting and found no paint had dropped on Plaintiffs' equipment.

After due deliberation, the Court concludes that Plaintiffs in this case are third-party beneficiaries of the insurance contract between Defendant insurance company and the paint contractor, that the negligent acts of the paint contractor, as found by the Dallas State District Court, resulted in damage caused by accident and that such damages were undesigned and unexpected, and that Defendant insurance company waived its defense of notice by its acts of independent investigation.

Accordingly, judgment should and will be entered for the Plaintiffs in the amount of thirty thousand ($30,000.00) dollars, the sum assessed by the State Court jury as the amount of damages incurred by Plaintiffs to their property.