**Dr. J. R. JACKSON, Plaintiff,**

v.

**NATIONAL FLOOD INSURERS ASSO-CIATION and the Home Insurance Company, Defendants.**

**Civ. A. No. 73–H–175.**

United States District Court,
S. D. Texas,
Houston Division.

June 12, 1974.

W. N. Shaw, Freeport, Tex., for plaintiff.

Chilton Bryan, Houston, Tex., for defendants.

## MEMORANDUM OPINION

SEALS, District Judge.

On the 10th day of September, 1971, tides generated by Hurricane Fern inundated Plaintiff's beach front property located near Freeport, Texas. Waters from the Gulf of Mexico reached a depth of approximately two feet under his elevated beach house and remained at that level for several hours. Before the tide receded a considerable amount of soil was washed from beneath a concrete slab which covers the earth fill below the house.

Plaintiff was fortunate, or at least that was his first impression, in that he had taken advantage of the flood insurance made available by the National Flood Insurance Act of 1968. He em-

ployed an independent contractor to make the necessary repairs at a cost of $1,193.50 and requested reimbursement from the Defendants. The claim was denied and Plaintiff has sought relief in this Court as permitted under 42 U.S.C. § 4053.

Defendants put forth two reasons why recovery should not be granted in favor of Plaintiff. First, they do not view the erosion from beneath the slab as a compensable loss under the policy. They admit coverage as to the house and foundation, but contend that the damage here was confined to the lawn and yard lying about and around the house and did not reach the foundation. Second, Defendants submit that even if the loss is compensable, Plaintiff is barred from recovery since he failed to submit a sworn proof of loss as specifically required by the policy. Plaintiff, of course, disagrees with Defendants' claim that only the lawn or yard was damaged, and further asserts that Defendants waived the requirement that a sworn Proof of Loss be filed and are estopped to claim that Plaintiff failed to comply with the policy requirements.

As indicated above the controversy is over the loss of soil from underneath a slab which rests on the dirt fill beneath Plaintiff's beach house. This slab is an unbroken layer of concrete covering the entire area beneath the house which stands on ten-foot pilings. It surrounds the pilings and extends a few feet beyond the outer pilings on the east side of the building where the damage occurred. For about half of its length this extension runs under a stairway leading to a porch on the front or south side of the house.

## I. COVERAGE.

Plaintiff's policy is a standard one approved by the Federal Insurance Administrator and used by all companies issuing insurance under the Act. 42 U.S.C. § 4013, 24 C.F.R. § 1909.1 et seq. (1973). It provides coverage for any direct damage or loss by flood to a dwelling. The term dwelling is defined as ". . . a residential building designed for the occupancy of from 1 to 4 families and occupied principally for dwelling purposes by the number of families stated herein." The policy also states, "When the insurance under this policy covers a dwelling, such insurance shall include additions in contact therewith . . . (but not lawns, trees, shrubs, plants or other property not covered under the provisions of this policy) . . ." This is the extent to which coverage is defined in the policy and neither the statute nor the federal regulations promulgated pursuant to it contain any language which further clarifies or elaborates upon the policy terms.

The position assumed by Defendants is quite simple. They do not compensate for any loss of soil or erosion which occurs outside the structural pilings of this type of elevated beach house, and they contend that the erosion here did not reach the pilings. In their opinion, any earth outside the pilings cannot be considered a part of the dwelling's foundation regardless of whether the earth is covered by a concrete slab or not. As to the slab itself, they do not view it as a part of the foundation, or an addition in contact with the dwelling.

Plaintiff regards the entire slab as part of the dwelling's foundation and argues that the loss of soil from beneath any part of it is a threat to the slab and therefore to the dwelling. If it is not a part of the foundation and thus the building proper, Plaintiff would certainly classify it as an "addition in contact therewith" within the policy's terms.

From the evidence it appears to the Court that some erosion did indeed extend far enough under the slab to reach the pilings. By the force of their own argument Defendants are liable for this portion of the loss. The case does not end here, however, since the evidence also indicates that the great bulk of the erosion was confined to the area outside the pilings. Most of it occurred underneath that portion of the extension running under the stairway, but repairs

were required along the entire length of the extension on the east side of the building.

 This Court is in agreement with Plaintiff that the terms "dwelling" and "building" as used in the policy are sufficiently broad to encompass this entire slab including the extension on the east side. The slab as a whole, not just that portion inside the pilings, functions much as a ground floor would, contributing to the lateral stability of the pilings and stairway and generally helping hold the earth beneath the entire structure in place. Words in an insurance policy are to be given their common and ordinary meaning. Appleman, *Insurance Law and Practice*, § 7402 (1943). "Ordinarily, nice distinctions in language are not favored, and the desired meaning of the language is that which would be attached by the ordinary person of average understanding in purchasing the insurance." *American National Ins. Co. v. Wilson State Bank*, 480 S.W.2d 296, 300 (Tex.Civ.App.1972). It is apparent that this slab forms an integral part of the under structure of the building and would be understood as part of the foundation by the average person seeking insurance for this beach home.

 It might be added further that even if the slab were not regarded as part of the building proper, it could certainly be considered an "addition in contact therewith." Although most decisions dealing with this and similar phrases have involved connected but identifiably separate structures with walls, a roof and a floor, the word "addition" does not have such a well defined meaning to justify its construction apart from and independent of the facts under which it was employed. *Hall v. Gulf Ins. Co. of Dallas*, 200 S.W.2d 450 (Tex.Civ.App.1947); 1 C.J.S. Addition 1455. In light of the nature of the building insured, a beach house on ten foot pilings, Plaintiff's characterization of this slab as an "addition" seems more reasonable than Defendants' view of it as something lying on the lawn not a part of the building in any way. In such a case the insured's interpretation is to be given effect. *Prudential Ins. Co. of America v. Beall*, 454 S.W.2d 478 (Tex.Civ.App.1970); *Brown v. International Service Ins. Co.*, 449 S.W.2d 491 (Tex.Civ.App.1969).

Of course, there may well be a point where the extension of a slab beyond the pilings would cease to be a part of the dwelling and become nothing more than something lying on the lawn. That point was not reached here however. The extension in this case was reasonably necessary to surround the pilings and to encompass the area under the stairway.

## II. PROOF OF LOSS.

With respect to notice and proof of loss the policy states:

Requirements In Case of Loss—The Insured shall given written notice, as soon as practicable, to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged property and put it in the best possible order. Within sixty days after the loss, unless such time is extended in writing by this Company, the Insured shall render to this Company a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following: the time and origin of the loss, the interest of the Insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss. The Insured, at the option of this Company, may be required to furnish a complete inventory of the destroyed,

damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed, and verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

Plaintiff admits failure to comply with these proof of loss requirements but contends that Defendants waived the filing of a proof of loss and are estopped by their conduct from raising this issue.

A day or two after the storm tide subsided Plaintiff telephoned R. M. Munson of the Munson Insurance Agency in Angleton, Texas, the insurance agency through which the policy was purchased. After getting the preliminary details from Plaintiff, Munson mailed a written notice on September 13, 1971 to the Home Insurance Company in Houston. The Home Insurance Company is the servicing agent in this State for the National Flood Insurers Association. This notice identified the insured property and advised that a claim was being made for damage caused by Hurricane Fern.

The Home Insurance Company selected General Adjustment Bureau, Inc., from its approved list of adjusters and referred Plaintiff's claim for investigation. M. A. Soileau, the Manager of General Adjustment Bureau, Inc.'s Bay City, Texas office, undertook the assignment. He met with Plaintiff at the beach house on or about September 17, 1971 and surveyed the loss. Soileau and Plaintiff found themselves in disagreement from the outset. Plaintiff at this time was of the opinion that the entire loss of soil both from beneath the slab and from the yard generally was covered. Soileau told Plaintiff that damage to the yard or lawn was definitely excluded and that erosion from beneath the slab was covered only if it reached inside the pilings. He maintained then, as the Defendants do now, that no erosion occurred inside the pilings.

In late September, Soileau made several more visits to the site and had further discussions with Plaintiff. Soileau remained convinced that the claim should be denied, but he told Plaintiff to go forward with repairs and that a report would be made to the Home Insurance Company and eventually to the National Flood Insurers Association for a final decision. An excerpt from that report submitted by Soileau reads as follows:

After some discussion, it was pointed out to the insured that I was of the opinion that coverage for lawn and fences were specifically excluded under this policy, and at that point, there did not seem to be a claim involved. The insured would have no part of this opinion, and it was agreed that Dr. Jackson should assemble his claim so that it could be presented on to you for interpretation.

After several re-inspections and numerous discussions with the insured, as well as the landscaper, we have arrived at this point where claim is being made in the amount of $1,193.50. As per the attached letter from the insured, you will note that the total bill for all filling and landscaping totalled $2,225.00. I have requested and received a break down cost of the work completed under and around the slab as the insured has finally conceded that the lawn repairs were excluded.

The letter from Plaintiff (the insured) which Soileau refers to in his report is attached as Appendix A. It indicates that Plaintiff was attempting to promptly comply with the requests made by Soileau pursuant to their agreement that Plaintiff would assemble his claim for presentation. Plaintiff describes the repairs made and segregates the amount spent solely on the foundation (slab). He closes with a request that he be informed if any additional information is needed and an offer to provide pictures of the damage and a breakdown of the work done on the foundation.

Plaintiff again wrote Mr. Soileau about his claim on November 8, 1971. This letter simply requests a status report. "Will you please inform me of

[sic] the status of my claim for damage done during Hurricane Fern . . . A report of this was forwarded to you on October 4, 1971. To date, I have had no response." Apparently there was no further communication between the parties until Plaintiff mailed another letter to Soileau on February 24, 1972, describing the repairs again and enclosing pictures of the damage. On March 29, 1972 Plaintiff received a letter from Soileau informing him that his claim had been presented to the National Flood Insurers Association and denied. As to the reason for disallowance the letter states: "The reason being that all damages occurred outside the foundation walls. It is the opinion of the insurer that the foundation of this type dwelling is the structural pilings." Plaintiff's failure to submit a proof of loss is not mentioned.

These communications, considered in conjunction with the testimony of the Plaintiff and Soileau at trial, indicate that there was no conscious election by Plaintiff not to file a proof of loss in the form required by the policy. He read the policy in a cursory manner, as most people read insurance policies, but did not realize that he was required to do anything more than contact the agent from whom the policy was purchased and follow the instructions of the adjuster. He assumed that these professional insurance people would advise him of how to properly file a claim. He was certain that the information given Soileau was sufficient especially since Soileau told him that his claim would be considered and remained silent when specifically requested to advise if any additional information was needed. Soileau was authorized to handle the proof of loss phase of Plaintiff's claim and was at all times aware of the policy requirements, yet the evidence indicates that he never mentioned proof of loss to Plaintiff during their discussions.

■ Under these facts, can it be said that Defendants waived a formal proof of loss? Texas courts have re-

peatedly held that this requirement is designed for the benefit or protection of the insurer and may be waived by the company or its authorized agents. 32 Tex.Jur.2d § 381 at 589 (1962). To establish a waiver the insured must show that the insurer, with full knowledge of the facts, did or failed to do something inconsistent with an intention to exercise its rights. *King v. Commercial Union Ins. Co. of N. Y.*, 306 F. Supp. 9 (N.D.Tex.1969). Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *United States Fidelity & Guaranty Co. v. Bimco Iron Corp.*, 464 S.W.2d 353 (Tex.1971). With respect to waiver the acts of an authorized adjuster are, in effect, the acts of the company. *United States Fidelity & Guaranty Co., supra.*

■ Under Texas law Soileau's silence without more would not amount to a waiver. It is well established that mere silence on the part of the insured with knowledge that a loss has occurred and that no proof of loss has been filed is not an intentional relinquishment of the proof of loss requirement or conduct inconsistent with claiming it. This rule has even been applied where the insured was in jail and thus incapable of filing a proof of loss without some assistance from the insurer. *Williams v. Bankers Fire and Marine Ins. Co.*, 277 S.W.2d 742 (Tex.Civ.App.1955).

■ There was much more here, however, than merely a failure to inform. Soileau told Plaintiff what information to provide and that his claim would be considered. Further, he failed to respond to Plaintiff's inquiry as to whether additional data was needed. No Texas decision has been cited or found involving this precise point, but in this Court's opinion the conduct of Soileau can and should be considered a waiver under Texas law. He misled or lulled Plaintiff into believing that no proof of loss would be required. *Chicago Fire & Marine Ins. Co v. Herrin*, 54 S.W.2d 236 (Tex.Civ. App.1932). Considered in the context

in which it was made, his statement that Plaintiff should submit a breakdown of the cost of repairs and that the claim would be considered on that basis, coupled with his failure to respond to Plaintiff's inquiry about the need for additional information, is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it.

Although it is not necessary to the resolution of this case, one further point deserves mention. In deciding this action this Court confined itself to applicable Texas authorities. The parties presented their arguments in terms of Texas law and did not at any time urge the Court to adopt or fashion federal substantive law. Plaintiff did not address the issue and Defendants merely cited *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), stating that it ". . . requires this Honorable Court as a Court sitting in Texas to follow the substantive law of Texas."

Of course, this is not a suit where jurisdiction is based on diversity of citizenship, and *Erie* is therefore not absolutely controlling, but this observation does little to settle the issue of whether federal or state law should be applied. See Wright, *The Law of Federal Courts*, § 60 at 247. Without expressing any opinion on this difficult question, it is sufficient to state that for the purposes of this suit the choice between state and federal law would not affect the outcome either as to coverage or proof of loss.

■ The coverage issue involved nothing more than an interpretation of policy language under rules of construction which are universally accepted. On the proof of loss question, a decision by this Court to fashion a federal rule would have made Plaintiff's case stronger. First, the conduct of Soileau was so misleading that in all justice and equity it would have to be understood as a waiver under any federal rule that might be adopted. Secondly, Texas courts take the view that a denial of liability on grounds other than failure to file a proof of loss operates as a waiver only if the

denial occurs before the time for filing a proof of loss has expired. *United States Fidelity & G. Co. v. Bimco Iron & M. Corp.*, 464 S.W.2d 353 (Tex.1971). This Court would hold that such a denial operates as a waiver regardless of when it occurs. (For a discussion of both views see 49 A.L.R.2d 161). Defendants in a letter of March 29, 1972 stated that Plaintiff's claim was denied because damage did not extend to the foundation —no mention was made of Plaintiff's failure to file a proof of loss. This letter was received after the time for filing a proof of loss had expired.

The Plaintiff will submit a Final Judgment within ten (10) days of the date of this Order. Damages are to be computed in accordance with the deductibles provision of Plaintiff's policy.

The Clerk will file this Order and furnish counsel for all parties with true copies.

### APPENDIX A

115 South Cedar
Lake Jackson, TX 77566
October 4, 1971

Mr. M. A. Soileau
Branch Manager
General Adjustment Bureau, Inc.
P. O. Box 1110
Bay City, TX 77414

Dear Mr. Soileau:

I appreciated the opportunity of discussing with you the damage done to my beach home located at 519 Beachfront Drive at Surfside.

As per your instructions, I had the man who repaired the lot and house to provide me a statement for the amount of work done in repairing the foundation under the structural part of the building. After your inspection you can readily understand why this was expensive. Since the high tides and rising water had washed out the sand and dirt beneath the foundation by getting in through the cracks and the pilings around the foundation it was necessary to remove the pilings, knock holes in the concrete, put

up forms, pour the concrete, remove the forms, and replace pilings.

I am enclosing a statement of the charges for the foundation work only. The total bill for work done on the yard and areas not considered part of the structural foundation was $2,225.00. Labor, materials, and other expenses involved in replacing the foundation is $1,193.50.

If there is additional information needed, please let me know. I should be happy to provide pictures of the damage and the statement of charges presented for work done to repair the foundation.

Your assistance in this matter is appreciated.

Sincerely,

 J. R. J.

J. R. Jackson

/s

Enclosure