Cole, et al. *v.* McDonald, et al.

No. 40979          March 16, 1959          109 So. 2d 628

*Thos. J. Tubb, Harvey S. Buck,* West Point, for appellant.

*Richard B. Booth, Robt. D. Patterson,* for appellees.

Holmes, J.

L. B. Cole, as complainant in the court below, filed his original and amended bills of complaint in the Chancery Court of Monroe County against the appellees as defendants in the court below, seeking to have confirmed in him title to certain land therein particularly described situated in Monroe County, Mississippi, and comprising approximately 247.6 acres, less and except an undivided two-thirds interest in and to all oil, gas or other minerals of like, kind and character, which are not a part of the soil, in, on and under said land, and further seeking particularly to have confirmed in him title to all bentonite in, on and under said land, and to cancel all claims of the defendants thereto as clouds upon the asserted title of the complainant. The appellees in their answer did not controvert the complainant's claim of title to the surface of the land in question, but denied that the complainant was the owner of all bentonite in, on and under said land.

Upon the hearing of the cause, the chancellor rendered a decree confirming in the complainant, L. B. Cole, title to the surface of the land in question and adjudging that the bentonite therein and thereunder was owned in the proportion of one-third by L. B. Cole, the complainant, one-third by James McDonald, Ruth Sykes and Mae Mills, the heirs and devisees of Mrs. Cleo McDonald Young, who was killed in an automobile accident on November 14, 1956, and one-third by Mrs. F. A. Bradley, Sr., the sole heir and devisee of F. A. Bradley, Sr., who died on April 5, 1937. From this decree, the complainant, L. B. Cole, prosecuted this appeal. Pending the appeal of this cause to this Court, the complainant, L. B. Cole, died on September 3, 1958, and the cause as to him has been revived in the name of his executor and his heirs and devisees.

The controversy is over the ownership of the bentonite in, on and under the land in question, and arises as follows: For a time prior to February 24, 1927, E. L.

Young, F. A. Bradley and L. B. Cole were partners doing business as the E. L. Young Company and the E. L. Young Heading Company. The Partnership was engaged in the sawmill, lumber and timber business and owned real and personal property including the land here in question. On February 24, 1927, E. L. Young died and his widow, Mrs. Cleo McDonald Young, succeeded to the ownership of his interest in said partnership and the assets thereof. On June 30, 1927, the said Mrs. Cleo McDonald Young entered into an agreement with the said F. A. Bradley whereby she conveyed her interest in the assets of the partnership, including the land here involved, to the said F. A. Bradley, subject to certain exceptions and reservations as to oil, gas or other minerals. The agreement contained, among other provisions, the following:

"Party of the first part (Mrs. Cleo McDonald Young) also reserves a one-third (1/3) interest in and to all gas, oil or other minerals that may be found or produced from the lands in Monroe County, Mississippi conveyed to E. L. Young Company by T. A. and L. Jenkins, and the lands in said county conveyed to E. L. Young by Mrs. Gertrude B. Eckford, et al. Each of the parties hereto shall sign and execute such further instruments as the other party shall reasonably require for effectuating this agreement. Party of the first part also reserves a one-third (1/3) interest in the B. H. McFarland, Trustee, oil leases and royalties for which she agrees to credit second party's (F. A. Bradley) note with $33.33."

The said agreement contained the following signed by L. B. Cole: "I, L. B. Cole, one of the surviving partners of the firm of E. L. Young Company and E. L. Young Heading Company, hereby agree and consent to the foregoing agreement between Mrs. Cleo McDonald Young and F. A. Bradley."

Pursuant to said agreement and on the same date, June 30, 1927, Mrs. Cleo McDonald Young executed a deed conveying to F. A. Bradley all of her right, title and interest in the assets of the partnership, including the land in question. This deed contained the following:

"Except that the grantor hereby excepts and reserves unto herself, her heirs and assigns, one-third (1/3) of the oil and gas or other minerals or the proceeds therefrom, which may be found or produced from, under, and on the above described lands, together with the right of ingress and egress for the purpose of developing and extracting said oil and gas and other minerals, and the right to use such part of the surface of said premises as may be necessary or convenient in the development and extraction of said minerals."

On March 20, 1928, the said L. B. Cole, as the party of the first part, and the said F. A. Bradley, as the party of the sceond part, entered into an agreement in writing whereby the said L. B. Cole conveyed to the said F. A. Bradley his right, title and interest in certain of the assets of the aforesaid partnership, subject to certain reservations and exceptions, and whereby the said F. A. Bradley agreed to convey to the said L. B. Cole, subject to certain reservations and exceptions, all of his interest in certain of the assets and property of the partnership, including the land here in question. Said agreement contained the following provisions:

"Party of the second part (F. A. Bradley) is also to convey to party of the first part (L. B. Cole) all of his interest in the property in Aberdeen, Mississippi, known as the Mrs. Allie M. Watkins property, and also all of his interest in the property in Monroe County, Mississippi, known as the McQuiston and Eckford land, except, said second party is to reserve a one-third (⅓) interest in and to all oil, gas or other minerals that may be found or produced from said McQuiston and Eckford land. Said

party of the first part also reserves a one-third (⅓) interest in and to all oil, gas or other minerals that may be found or produced on the lands to be conveyed by him to second party, except the land in Aberdeen, Mississippi, known as the French property, and the 10 acres, more or less, in Monroe County, Mississippi known as the O. O. Towery land. Party of the first part also reserves a one-third (⅓) interest in the B. H. McFarland Trustee oil leases and royalties. Each of the parties hereto shall sign and execute such further instruments as the other party shall reasonably require for effectuating this agreement.''

On the same date, March 20, 1928, and pursuant to the aforesaid written agreement, the parties executed deeds, each to the other, for the purpose of effectuating the a-forsaid agreement. The said F. A. Bradley executed a deed to L. B. Cole whereby the land in question was conveyed to L. B. Cole. Following the description of the land therein described, the deed contained the following exception and reservation:

''Excepting therefrom one-third (⅓) of the oil, gas and other minerals, or the proceeds therefrom, which may be found or produced from, under and on the above described lands, which said one-third (⅓) now belongs to Cleo McDonald Young as shown by deed from her to F. A. Bradley, recorded in Deed Book 95, Page 240, land records of Monroe County, Mississippi, and here referred to.

''Grantor also excepts and reserves unto himself, his heirs and assigns, one-third (⅓) of the oil and gas or other minerals, or the proceeds therefrom, which may be found or produced from, under and on the above described lands, together with the right of ingress and e-gress for the purpose of developing and extracting said oil and gas and other minerals, and the right to use such part of the surface of said premises as may be necessary

and convenient in the development and extraction of said minerals.

"It is hereby intended to put the entire title to the above described lands in said L. B. Cole, with an undivided one-third (⅓) interest in the oil, gas and minerals thereon in said L. B. Cole, a one-third (⅓) undivided interest in and to said minerals in said F. A. Bradley, and a one-third (⅓) undivided interest in and to said minerals in said Cleo McDonald Young." (Emphasis ours)

The grantor in the aforesaid deed further conveyed all of his right, title and interest in certain lots in Aberdeen, Mississippi, subject to the following exception: "Excepting therefrom one-third (⅓) of the oil, gas and other minerals, or the proceeds therefrom, which may be found or produced from, under and on the above described land, which said one-third (⅓) now belongs to Cleo McDonald Young, as shown by deed from her to F. A. Bradley, recorded in Deed Book 95, page 239, Land Records of Monroe County, Mississippi, and here referred to; it being intended hereby to put the entire title of said last described lot in said L. B. Cole subject to a one-third (⅓) oil, gas and minerals interest of Cleo McDonald Young."

On the same date, March 20, 1928, L. B. Cole executed two deeds by which he conveyed unto F. A. Bradley the property which he had agreed to convey in the aforesaid written agreement. In one of said deeds following the description of the land conveyed there was contained the following provision:

"Excepting from the first two above described tracts of land one-third (⅓) of the oil, gas and other minerals, or the proceeds therefrom, which may be found or produced from, under and on the first two above described tracts of land which said one-third (⅓) interest now belongs to Cleo McDonald Young, as shown by deed from her to F. A. Bradley recorded in Deed Book 93, page 316 of the Land Records of Itawamba County, Mississippi,

and here referred to. Grantor also excepts and reserves unto himself, his heirs and assigns, one-third (⅓) of the oil, gas or other minerals, or the proceeds therefrom, which may be found or produced from, under and on the first two above described tracts of land of 165 and 102½ acres respectively, together with the right of ingress and egress for the purpose of developing and extracting said oil and gas and other minerals, and the right to use such part of the surface of said premises as may be necessary or convenient in the development and extraction of said minerals; it being intended to convey thereby the entire title to the above described two tracts of land containing 165 and 102½ acres respectively to F. A. Bradley with an undivided one-third (⅓) interest in the oil, gas and minerals therein in said F. A. Bradley, a one-third (⅓) undivided interest in and to said minerals in L. B. Cole, and a one-third (⅓) undivided interest in said minerals in Cleo McDonald Young.''

The second of said deeds executed by the said L. B. Cole to the said F. A. Bradley excepted from the conveyances therein one-third (⅓) of the oil, gas and other minerals previously reserved in Mrs. Cleo McDonald Young and reserved in himself one-third (⅓) of the oil, gas and other minerals in the lands conveyed, and recited that it was the intention to put the entire title to the lands conveyed in said in said F. A. Bradley, with an undivided one-third (⅓) interest in and to said oil, gas and other minerals thereon in Cleo McDonald Young, an undivided one-third interest in and to said minerals in said L. B. Cole.

It was alleged and charged in the amended bill of complaint that bentonite of commercial value had been discovered in and under the land in question; that under the conveyances executed by Mrs. Cleo McDonald Young to F. A. Bradley dated June 30, 1927, and by F. A. Bradley to L. B. Cole dated March 20, 1928, made exhibits A and B respectively to the amended bill, the heirs and de-

visees of F. A. Bradley and Mrs. Cleo McDonald Young claim that they together own an undivided two-thirds interest in and to all bentonite and all minerals on and under said land by virtue of the aforesaid two conveyances, and that such claims cast a cloud upon the title of the complainant who claims to be the owner in fee simple of all the bentonite and all minerals on, in and under said land, except an undivided two-thirds interest in and to all oil, gas and other minerals *of like kind and character* which are not a part of the soil; that on October 5, 1926, natural gas in commercial quantities was discovered in Monroe County when the first well of the Quincy gas field was brought into production; that following and continuing after this discovery well for a period of some three years there was great activity in the leasing of land for oil and gas production and in the sale of oil, gas and mineral rights in lands in the whole of Monroe County; that it was the custom in Monroe County following the discovery of natural gas for the conveyance or reservation in a deed of oil, gas and and other minerals, or minerals, to convey or reserve oil, gas and other minerals *of like kind and character which are not a part of the soil;* that at the time of the execution of the aforesaid conveyances, the said Mrs. Cleo McDonald Young and the said F. A. Bradley were engaged in the lumber, sawmill and timber business and that neither of them was engaged in or connected with any occupation or business in the processing or selling of bentonite, clays, sand and gravel; that in order to produce bentonite for commercial use, it is necessary to remove the over-burden, or top soil, running from five feet to more than twenty feet and that such destroys the value of the land for agricultural purposes for which it is now used; that bentonite is not a mineral but is a clay as distinguished from a mineral; that it was not the purpose and intention of the grantors in the aforesaid deeds, made exhibits A and B to the amended bill, to reserve and retain unto them-

selves by the reservation of "oil, gas and other minerals" the bentonite, clays and minerals except oil, gas and other minerals of like kind and character which are not a part of the soil, in, on and under said land, but was the purpose and intention of said grantors to reserve unto themselves oil, gas and other minerals of like kind and character which are not a part of the soil.

The amended bill prayed that a decree be entered confirming the title of the complainant to the land in question, less and except an undivided two-thirds interest in and to all oil, gas or other minerals of like kind and character which are not a part of the soil in and under said land as against all of the defendants and all other persons having or claiming any interest therein; that the asserted titled of the complainant in and to all bentonite, and all minerals, except oil, gas or other minerals of like kind and character which are not a part of the soil in, on, and under the said land be confirmed in the complainant as against the claims of the defendants; that the aforesaid deeds, made exhibits A and B to the amended bill, be construed to include only oil, gas and other minerals of like kind and character which are not a part of the soil in the reservation to the grantors therein of an undivided interest in and to "oil, gas or other minerals" or "oil, gas and other minerals."

The answer of the defendants set up the following affirmative matters: That during the year 1926 and for many years prior thereto, L. B. Cole, E. L. Young, and F. A. Bradley were partners in the operation of a lumber manufacturing business located in the City of Aberdeen, Monroe County, Mississippi; that on February 24, 1927, E. L. Young died leaving as his sole and only heir his widow, Mrs. Cleo McDonald Young; that the said Mrs. Cleo McDonald Young was killed in an automobile accident on November 14, 1956; that F. A. Bradley, Sr., died on April 5, 1937; that at the time of the death of the said E. L. Young, he and F. A. Bradley and L. B. Cole

were partners doing business as E. L. Young Company and E. L. Young Heading Company; that on June 30, 1927, the said Mrs. Cleo McDonald Young entered into a dissolution of said partnership witht the said L. B. Cole and F. A. Bradley, Sr., and pursuant thereto, conveyed her interest in the partnership and assets, including the land here involved, to F. A. Bradley, Sr., reserving unto herself an undivided one-third interest in and to all of the oil, gas or other minerals or proceeds therefrom, including bentonite, which may or may not be located, or which may or may not be found or produced from the land in question, with all necessary rights of ingress and egress for developing and extracting said oil, gas and other minerals, and the right to use such part of the surface as might be necessary or convenient in the extraction of the same; that on March 20, 1928, the said F. A. Bradley and L. B. Cole entered into an agreement dissolving the aforesaid partnership and providing for the distribution of the partnership assets whereby L. B. Cole was to receive certain land and F. A. Bradley was to receive certain land, and each of the said parties was to retain and reserve in the land conveyed to each respectively a one-third interest in and to all of the oil, gas or other minerals that might be found or produced from said land, including bentonite; that said instruments were executed accordingly and contained the reservations and exceptions as aforesaid; that the aforesaid deed from F. A. Bradley to L. B. Cole dated March 20, 1928, contained the following provision:

"It is hereby intended to put the entire title to the above described lands in said L. B. Cole with an undivided ⅓ interest in the oil, gas and minerals thereon in said L. B. Cole, a ⅓ undivided intrest in and to said minerals in the said F. A. Bradley, and a ⅓ undivided interest in said minerals in the said Mrs. Cleo McDonald Young."

The answer further set up and averred that it was the intention of all of the surviving partners of said

partnership that the said F. A. Bradley was to assume the outstanding obligations and indebtedness of the said partnership, holding the said Mrs. Cleo McDonald Young and the said L. B. Cole free of liability to the creditors of said partnership; that it was intended by the execution of the aforesaid instrument to effectuate a dissolution of said partnership, and also intended as a result thereof to leave each surviving partner in the same position that he had been in prior to said dissolution with reference to the oil, gas and other minerals of any and all kinds, including bentonite, and any other minerals.

The answer further averred that there exists in Monroe County pits of bentonite and that it has been the custom of the country wherein the land in question is located to treat bentonite as a mineral; that the land in question is suitable only for timber growing purposes and is not suitable for agricultural uses, and has never been to any extent subjected to such use; that bentonite is a mineral of great commercial value and has been mined in such states as Wyoming, Florida and Mississippi, by shaft or underground methods as well as open pit methods; that only a small portion of the land in question is underlaid with bentonite and that the defendants deny that the mining of the bentonite in and under said land would destroy the surface of the land for the use to which it has been subjected, namely, the growing of timber.

The answer further set up as a defense laches and estoppel and denied that the complainant was the owner of all of the bentonite under the aforesaid land.

■■ ■ The case presents for our determination the construction and meaning of the exceptions and reservations contained in the deed executed by F. A. Bradley to L. B. Cole under date of March 20, 1928, which appear in the following language:

"Excepting therefrom one third (⅓) of the oil, gas and other minerals, or the proceeds therefrom, which may be found or produced from, under and on the above

described lands, which said one-third (⅓) now belongs to Cleo McDonald Young, as shown by deed from her to F. A. Bradley, recorded in Deed Book 95, page 240, land records of Monroe County, Mississippi, and here referred to.

"Grantor also excepts and reserves unto himself, his heirs and assigns, one-third (⅓) of the oil and gas or other minerals, or the proceeds therefrom, which may be found or produced from, under and on the above described lands, together with the right of ingress and egress for the purpose of developing and extracting said oil and gas and other minerals, and the right to use such part of the surface of said premises as may be necessary or convenient in the development and extraction of said minerals.

*"It is hereby intended to put the entire title to the above described lands in said L. B. Cole, with an undivided one-third (⅓) interest in the oil, gas and minerals thereon in said L. B. Cole, a one-third (⅓) undivided interest in and to said minerals in said F. A. Bradley, and a one-third (⅓) undivided interest in and to said minerals in said Cleo McDonald Young."* (Emphasis ours).

The appellant contends that the reservations and exceptions have reference only to oil, gas or other minerals of like kind and character which are not a part of the soil, and that the substance known as bentonite in or under the land in question is not a mineral and is, therefore, not included in the exceptions and reservations, and if a mineral, it is not of like kind and character with oil and gas and is not a part of the soil and is, therefore, not included in the reservations and exceptions.

On the other hand, the appellees contend that the substance in the land commonly known as bentonite is a mineral and that the exceptions and reservations apply to minerals of any kind or character, and, therefore, include bentonite, and further, that it clearly appears from the

evidence that it was the intention of the parties to apply the exceptions and reservations to minerals of any kind or character, including bentonite.

In determining the meaning of the exceptions and reservations here in question, regard must be had not only to the language of the instrument in which they occur, but also to the relative position of the parties involved and to the substance of the transaction which the instrument embodies. 58 C.J.S., Mines and Minerals, page 17. It clearly appears from the record that the conveyances executed respectively by Mrs. Cleo McDonald Young, F. A. Bradley, and L. B. Cole, arose out of the relationship of the said three parties as partners, doing business as E. L. Young Company and E. L. Young Heading Company, engaged in the sawmill, lumber and timber business, and that said conveyances were made in effectuating a dissolution of the partnership and a disposition of the partnership assets which consisted of real and personal property, including the land here in question and other lands. Such was manifestly the substance of the transaction out of which the instruments arose. The plain language of the instruments would seem to indicate that it was the intention of the parties that each was to retain an equal interest in the oil, gas and other minerals of whatever kind or character. Considering the position of the parties involved and the substance of the transaction out of which the instruments arose, we think it would be an unreasonable construction to place upon the language of the conveyance by F. A. Bradley to L. B. Cole to say that the parties intended that Cole was to retain a one-third interest in the oil, gas and minerals of whatever kind or character, and that the other two parties were to each retain a one-third interest in the oil and gas and in minerals of only a certain kind and character. There is nothing in the language of the instrument to justify the conclusion that such an inequality in the disposition of the minerals was intended.

■■ The appellant argues, however, that bentonite is not a mineral, and is, therefore, not included in the reservation of oil, gas or other minerals. The proof is in conflict as to whether or not bentonite is a mineral. Two expert witnesses testifying for the appellant said that bentonite is not a mineral but a clay. Two expert witnesses testifying for the appellees maintained that bentonite is a mineral. The chancellor found as a fact that bentonite is a mineral. We deem this finding controlling since it is supported by substantial evidence and we are unable to say that it is manifestly wrong.

■■ The authorities are generally agreed that the word "minerals" has no definite or certain meaning. In the case of Witherspoon, et ux vs. Campbell, 219 Miss. 640, 69 So. 2d 384, 69 So. 2d 384, this Court said: "It also seems to be generally recognized that the word 'minerals' has no definite and certain meaning that can be attributed to it in all cases."

In 58 C. J. S., Mines and Minerals, page 17, we find the following: " 'Mineral' is a word of general language, and not per se a term of art or trade. It is not a definite term, and is used in so many senses, dependent on the context, that the ordinary definitions of the dictionaries throw but little light on its signification in a given case, and therefore, it is not capable of a definition of universal application, but is susceptible of limitation or expansion according to the intention with which it is used in the particular instrument or statute."

In the case of Northern Pacific Railway Company v. Soderberg, 188 U. S. 526, the Court said: "The word 'mineral' is used in so many senses, dependent upon the context, that the ordinary definitions of the dictionary throw but little light upon its signification in a given case."

In 18 R. C. L., Mines, page 1094, it is said: "The most reasonable rule is that each case must be decided upon the language of the grant or reservation, the surround-

ing circumstances and the intention of the grantor if it can be ascertained.''

We think that it is not difficult to ascertain that it was the intention of the parties to include in the reservation minerals of any kind or character in view of the relationship of the parties and the substance of the transaction out of which the instruments arose, and particularly the following language contained in the instrument: ''It is hereby intended to put the entire title to the above described lands in said L. B. Cole, with an undivided one-third ($\frac{1}{3}$) interest in the oil, gas and minerals thereon in said L. B. Cole, a one-third ($\frac{1}{3}$) undivided interest in and to said minerals in said F. A. Bradley, and a one-third ($\frac{1}{3}$) undivided interest in and to said minerals in said Cleo McDonald Young.''

We cannot conceive how the intention of the parties to vest in each of them an undivided one-third interest in the oil, gas and other minerals of whatever kind or character could have been more clearly and definitely expressed.

The appellant relies, however, upon the case of Witherspoon, et ux v. Campbell, supra, and contends that the decision of the court below is contrary to the opinion of the court in the Witherspoon case. The Witherspoon case involved a conveyance of 240 acres of land in Yazoo County by Miss Ruth Campbell to John Witherspoon wherein she reserved unto herself ''all minerals now owned by me of every kind and nature, both liquid and solid, with the right of ingress and egress, and all necessary rights for the exploration and development of the same; and subject to an oil, gas and mineral lease now of record on ten (10) acres off the west side of the NW¼ of Section 12, Township 11, Range 1 W.'' The granting clause of the deed conveyed and warranted to John Witherspoon the surface rights and all timber lying in, on or growing on said lands. The grantor in the deed claimed under the reservation all sand and gravel in or on the

land. This Court held that the sand and gravel were not included in the reservation in the deed. The appellant undertakes to find an analogy in this case and the case at bar. We do not think that the two cases are analagous in their facts. In the Witherspoon case, the Court pointed out that sand and gravel ordinarily are not included in a grant or reservation of minerals or of mineral royalty, although there is on the land involved sand and gravel susceptible of commercial production and use, citing 58 C. J. S., Sec. 155, page 324. The Court further pointed out in the Witherspoon case that the land conveyed was entirely underlaid by gravel and that the removal of the gravel from the land would destroy the surface. It was further pointed out by the Court that the conveyance there involved was executed approximately five years after the discovery of oil and gas in Yazoo County, and that it was a matter of common knowledge that grantors and purchasers of minerals under a conveyance or reservation of "all minerals" did not contemplate the inclusion of sand and gravel in the conveyance or reservation.

In the case at bar it seems manifest from the record that the several instruments executed by the parties and containing the reservations here involved grew out of the relationship of the parties as partners. It further seems manifest that the parties were undertaking to vest in each the same mineral estate. It is further apparent from the proof that the contemplation of the parties was not restricted solely to a consideration of oil, gas and other minerals of like kind and character. Unlike the proof in the Witherspoon case, oil and gas were not the only substances which had been discovered in Monroe County and the area thereabout prior to the execution of the conveyance by F. A. Bradley to L. B. Cole. Public interest was centered in other substances as the result of publications in the Aberdeen Examiner, a newspaper having a circulation in Monroe County. One of these articles

appeared under date of January 13, 1928, and made reference to books and manuscripts in the possession of Dr. E. N. Lowe, connected with the State Geological Department, wherein attention was called to the fact that bentonite had recently been discovered in Monroe County. Another newspaper article appeared under date of February 24, 1928, wherein it was said: "Large deposits of bentonite running 4 to 7 feet in thickness have been discovered in Utah sandbeds of the upper cretaceous beds that out-crop and form the county soil south of the City of Aberdeen." Another newspaper article under date of February 11, 1927, called attention to lignite, Fuller's earth, lead, and glauconite as being some of the minerals having commercial value and found in the County. Another article under date of February 20, 1927, was headlined: "Iron and coal discovered in Monroe County."

At the time of the execution of the deed by F. A. Bradley to L. B. Cole containing the reservation in question, it is manifest that public interest was aroused in minerals of many different types in the area in which the aforesaid deed was to operate. We think it could not be said, therefore, in reason that the parties involved contemplated the reservation only of certain kinds of minerals, but that it was the manifest intention of the parties that each should be vested with an undivided one-third interest in the oil, gas or other minerals of any kind or character.

It is of importance to note also that the proof in the case at bar shows that the land involved was not wholly underlaid with bentonite, but that the bentonite existed in the land in small deposits and in separated areas. It is further of importance to note that the proof shows that in removing the bentonite by the "strip" method, the top soil was removed and the bentonite extracted, and the soil then replaced in the pit, and that the surface of the land was therefore not destroyed but was capable of use for timber growing. It further appears from the proof

that the land here involved was not susceptible of use for agricultural purposes but was timber land and used for timber growing only. Thus the record discloses that there are material differences in the proof as developed in the Witherspoon case and the case at bar.

██ █ The appellant also invokes the doctrine of ejusdem generis to which reference was made in the Witherspoon case. We do not think, however, that this doctrine is applicable to the case at bar in view of what appears to have been the manifest intention of the parties as hereinbefore pointed out. In the case of State v. Russell, 185 Miss. 13, 187 So. 540, the Court said, with reference to the rule ejusdem generis: ''This rule is that 'where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated.' 59 C. J. S. 981. Like all other rules of construction, this rule is simply an aid invoked by the courts in determining the intent with which words are used and should not be applied when so to do would defeat the purpose sought to be accomplished by the use of the words, the meaning of which is under consideration.''

We think that to apply the rule of ejusdem generis to the case at bar would be to do violence to the manifest intention of the parties as well as to defeat the manifest purpose which the parties were seeking to accomplish.

It follows from what we have said that we are of the opinion that the decree of the court below was correct and that it should be and it is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Kyle, JJ.,* concur.