352 So.2d 1307 (1977)
The NEW HAMPSHIRE INSURANCE COMPANY
v.
Mrs. W.T. ROBERTSON.
No. 49765.
Supreme Court of Mississippi.
December 14, 1977.
*1308 Watkins & Eager, James L. Carroll, Jackson, for appellant.
Clark, Davis & Belk, W. Dean Belk, Indianola, for appellee.
Before SMITH, P.J., LEE and BOWLING, JJ., and BROOME, Commissioner.
RUFUS H. BROOME, Commissioner for the Court:[1]
This case arises out of a suit to collect on a comprehensive dwelling insurance policy issued by New Hampshire Insurance Company in favor of Mrs. W.T. Robertson covering damage to her dwelling and contents.
The case was tried on a stipulation of facts without a jury in the Circuit Court of Sunflower County. The lower court rendered a judgment for the plaintiff, for $9,949.07, holding the loss was within the coverage of the policy and the insurance company, by its actions, had waived its right to object to Robertson's failure to file a sworn proof of loss.
*1309 On or before April 9, 1975, Robertson noticed water bubbling up through a crack in the terrazzo floor of the den. Her home was built on a concrete slab foundation, and plumbing pipes were located beneath the slab. A plumber was called and found the water was from an underground leak caused by separation of a hot water line.
It was stipulated by the parties that the damage resulted from water pressure exerted upon the foundation or slab of the house and ultimately upon the floors and walls or from earth movement beneath the foundation of the house, or a combination, all of which was caused by the underground leak. The resultant damage in the amount of $9,999.07, consisted of settling and cracking of the patio, walls, floors and related damages.
The insurance policy is entitled "Comprehensive Dwelling Policy". On page one the policy specifies that perils insured against under Coverage Group A are "fire and allied perils as set forth in forms and endorsements attached hereto." Coverage Group A consists of a form insuring contents of the dwelling, and a form insuring the dwelling proper.
The next to last paragraph on page one provides: "... this company . . does insure the named insured ... against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS ENUMERATED IN THE SCHEDULE ... EXCEPT AS HEREIN PROVIDED ..."
After the first page, the policy is divided into two separate sections, one for insuring the contents, and the other for insuring the dwelling. The contents insurance section is in the nature of a specific coverage form insuring only that for which coverage is specifically provided and then containing some exclusions, whereas the dwelling insurance form is an all-risk insurance. It does not specify any particular coverage but says all-risk and then goes on to list certain exclusions.
Under "II. Coverage" the policy specifies: "This company agrees to insure against all risks of direct physical loss except as hereinafter excluded, those classes of property specifically covered under Items 1 and 2 of Coverage Group A, subject to all other conditions, limitations and exclusions contained in this policy." (Items 1 and 2 referred to are dwelling and outbuildings.)
In its pertinent parts, the dwelling portion contains these exclusions: "THIS COVERAGE GROUP DOES NOT INSURE AGAINST LOSS  (a) by wear and tear, deterioration, rust, mold, wet or dry rot, contamination, smog, smoke from agricultural smudging or industrial operations, mechanical breakdown; settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; ... (b) caused by, resulting from, contributed to or aggravated by earthquake, volcanic eruption, landslide, or any other earth movement; . . (c) caused by, resulting from, contributed to or aggravated by any of the following (1) Flood, surface water waves, tidal water or tidal waves, overflow of streams, or other bodies of water ... (2) Water which backs up through sewers or drains; (3) Water below the surface of the ground, including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other opening in such sidewalks, driveways, foundations, walls or floors ... (h) to plumbing, heating or air conditioning systems or domestic appliances, or by leakage or overflow from such systems or appliance, caused by or resulting from freezing... ."
The contents portion of the insurance policy provides under "II. Coverage": "This company agrees to pay for direct loss to contents insured ... caused by the following perils as defined and limited herein... ." In its pertinent parts, under definitions and limitations regarding coverage is found the following:
"12. Water Damage: Loss by water damage shall mean damage to or destruction of the property covered herein caused by the accidental discharge, leakage or overflow of water or steam from within a *1310 plumbing ... system ... including the cost of tearing out and replacing any part of the building covered required to effect repairs to the system or appliances from which the water or steam escaped. This company shall not be liable for (a) loss caused by or resulting from freezing... ."
In another section, the contents form contains an exclusion form identical to that in the dwelling form with regard to exclusion of loss caused by, resulting from, contributed to or aggravated by water below the surface of the ground.
As noted above, the part of the policy covering dwelling buildings excludes loss by settling and cracking of foundations, walls and floors. It also excludes loss caused by, resulting from, or contributed to by any other earth movement. Finally, it excludes a loss caused by water below the surface of the ground.
It is clear from the stipulated facts that the damage was caused by water below the surface. It is further clear that the damages resulted from earth movement under the foundation which caused the floors, walls and patio to settle and crack.
Based on a superficial reading of the exclusions, they appear to exclude the damage done. However, when read in context, several factors become significant.
(1) The provision excluding loss by settling and cracking of floors, walls, etc. appears in the context of a clause excluding loss by wear and tear, deterioration, rust, mold, wet or dry rot, contamination, smog, mechanical breakdown, etc. In this context, it would appear to exclude loss by settling and cracking due to ordinary swelling, expansion, settling or cracking as opposed to settling or cracking caused by some other external agent (here the water leak).
(2) The provision excluding loss by any other earth movement appears in the context of a clause dealing with earthquakes, volcanic eruption, and landslides. In this context, it would appear to be limited to "earth movement" resulting from natural forces (as opposed to earth movement resulting from the water leak).
(3) The provision excluding loss caused by, resulting from, contributed to, or aggravated by water below the surface of the ground appears in the context of a clause which also excludes (a) flood, surface water, waves, tidal water or tidal wave, overflow of streams, etc.; (b) water which backs up through sewers or drains. In this context it is arguable that the exclusion is either for natural water below the ground (as opposed to leakage from the plumbing system) or from subsurface water stemming from non-natural but exterior sources (as in water backed up from sewer drains or other exterior sources in the sense of not stemming from the dwelling itself).
This construction of the clause excluding either natural subsurface water only or subsurface water stemming from external sources is reinforced by two other clauses.
1. Paragraph H of the dwelling coverage excludes damages to plumbing or by leakage from a plumbing system, but is limited to that caused by freezing. It would appear to have been a simple matter to have excluded all leaks from plumbing if that had been the intent of the drafters of the policy.
2. Under the coverage of contents section of the contract, there is a below surface water exclusion, yet in the specific coverage provision of the contents portion it is provided that there is coverage of water damage. In that clause, "water damage" is defined as "damage to or destruction of the property covered hereby by ... leakage ... from within a plumbing ... system, including the cost of tearing out and replacing any part of the building required to effect repairs to the system... ." (Emphasis added). It, like the dwelling portion of the policy, then goes on to exclude only loss by freezing.
In this portion of the policy, at least, if the subsurface water exclusion is interpreted to mean all subsurface water from any source or cause, an ambiguity results, since to do so would negate the specific coverage *1311 of water damage resulting from leakage within a plumbing system.
There appears to be no Mississippi case considering the precise clauses and facts as occur here.
It is recognized in Mississippi, however, that
If an insurance contract is ambiguous and capable of two reasonable but different constructions, the construction will be adopted which is in favor of the insured since the contract is prepared by the insurer. Key Life Insurance Co. of South Carolina v. Tharp, 253 Miss. 774, 179 So.2d 555, 559 (1969).
We find from the analysis of facts and coverage clauses that an ambiguity resulted and we have consistently held that ambiguous language should be construed more strongly against the preparer of the contract.
Other state courts have considered virtually the same facts and clauses as involved here. Hartford Accident & Indemnity Co. v. Phelps, 294 So.2d 362 (Fla.App. 1974); Koncilja v. Trinity Universal Ins. Co., 35 Colo. App. 27, 528 P.2d 939 (1974); King v. Traveler's Ins. Co., 84 N.M. 550, 505 P.2d 1226 (1973); and Cantanucci v. Reliance Ins. Co., 43 A.D.2d 622, 349 N.Y.S. 187 (1973). All these have found the damage to be within the coverage of the policy. The only distinguishing factor was that each of these cases had a coverage clause specifically covering leakage from plumbing systems. (It is unclear from the cases whether this coverage was in the dwelling building section of the policy or in the contents section as here). The insurance company argues that this is sufficient to require a different result here. The fallacy with this reasoning is that the dwelling building policy is an "all risk" policy with no specific coverage listed, only exceptions. We, therefore, hold:
Where an all risk comprehensive dwelling policy excludes coverage of loss from water below the surface of the ground, but (1) construction in the context of adjoining clauses indicates exclusion is limited to natural below the surface waters or at the least to below surface waters stemming from exterior causes (in the sense of not stemming from the insured dwelling itself) and (2) construction of the clause as excluding damage caused by leakage from the plumbing system would negate a specific coverage in another section of the contract, then the policy must be construed as including loss caused by leaking from the plumbing system even though below the surface of the earth.
The appellant next argues that failure of the appellee to file a sworn proof of loss violates the terms of the policy and relieves it of all liability under the policy. Here, the insurance company was promptly notified of the loss on or about April 9, 1975. They were furnished copies of all bills and had access to the property. In addition, the insurance company failed to provide proof of loss forms and it was stipulated that the plaintiff had at all times been ready and willing to submit a sworn proof of loss form. Finally, the insurance company was allowed to and did conduct a full investigation with the cooperation of plaintiff.
These facts taken together with the insurance company's failure to show they were actually prejudiced in any way by the failure to file sworn proof of loss forms, are sufficient to establish a waiver of the proof of loss requirement. Nelson v. Phoenix of Hartford Ins. Co., 318 So.2d 839 (Miss. 1975); Soso Trucking Co., Inc. v. Central Ins. Agency, Inc., 236 So.2d 398 (Miss. 1970); Newark Fire Ins. Co. v. McMullen, 142 Miss. 369, 107 So. 523 (1926).
While it is true the insured and insurer signed a non-waiver agreement, it is also clear from the facts that the signing of the non-waiver agreement preceded the denial of liability by the insurance company. Compare Taylor v. Fireman's Fund Ins. Co., 306 So.2d 638 (Miss. 1974) (where the denial of liability occurred before signing of the non-waiver agreement). Where as here, there was an effective waiver of proof of loss, no prejudice shown by the insurance company, and the non-waiver agreement *1312 was followed by a denial of liability on the grounds of lack of coverage, the signing of a non-waiver agreement under the facts of this case would not bar recovery. See Charles Store, Inc. v. Aetna Ins. Co., 428 F.2d 989 (5th Cir.1970).
For the foregoing reasons, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.