Thomas RHODEN and Sharon
Rhoden, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, Defendant.

No. CIV. A. 3:98CV212BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 22, 1998.

John H. Downey, Rhoden, Lacy, Downey & Colbert, Jackson, MS, for Thomas Rhoden, Sharon Rhoden, plaintiffs.

Chris H. Deaton, Dan W. Webb, Sherrie L. Moore, Webb, Sanders, Deaton, Balducci & Smith, Tupelo, MS, for State Farm Fire and Casualty Insurance Company, defendant.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment. Having considered the Motions, Responses, Reply, Rebuttal, Surrebuttal, supporting and opposing memoranda, and all attachments to each, the Court finds that Defendant's Motion is well taken and should be granted, and Plaintiffs' Motion is not well taken and should be denied.

### I. Factual Background and Procedural History

This case involves a claim for damages under a homeowners insurance policy. The parties dispute whether the claim is covered under the policy or whether the claim falls within one or more policy exclusions. The parties have filed a joint submission of undisputed facts with their motions for summary judgment, and the Court will base its decision on these facts. The joint submission provides in relevant part as follows:

On April 1, 1986, the Plaintiffs purchased a house located at 2236 Sheffield Drive in Jackson, Mississippi (the "residence"). The residence had been constructed by A.H. Harkins.

In the summer of 1991, the Plaintiffs began work on an addition to the residence. The addition was completed, and in November 1991, Plaintiffs moved into that portion of the residence.

In 1993, State Farm Agent Sylvia Tullos issued an HO5 policy, Policy No. 24–19–2930–4 (the "policy") to Plaintiffs insuring the residence. The named mortgagee appears on the policy as "Deposit Guaranty National Bank" (the "Bank")[1]. The policy was renewed annually and was in effect at all relevant times subject to all terms and conditions stated therein. The policy provided coverage for accidental direct physical loss to property, but contained language describing losses not insured.

In late 1995 or 1996, Plaintiffs began to notice cracks in their driveway and in their bathroom tile. They also began to notice separation between the addition and the main house, and the door to the west-side addition began to stick.

On March 26, 1996, Plaintiffs sued A.H. Harkins, A.H. Harkins Building Contractor, Inc., and John Doe in the Circuit Court of Hinds County, Mississippi, alleging that these defendants' failure to properly design, construct, prepare, and fill lots, as well as their failure to properly design and construct the foundations of the houses on the lots, caused movement of the earth behind their residence and three houses located on their street. Plaintiffs alleged that this earth movement caused instability to the structure of their home.

In the spring of 1996, Plaintiffs had various engineers and consultants inspect the residence and provide slope stability reports and remedial recommendations. J.F. Broadwater, a professional engineer, inspected the residence and rendered a report for National Home Insurance Company regarding the condition of the residence. Additionally, Burns Cooley Dennis, Inc. ("Burns Cooley"),

---

[1]. Plaintiffs have an indebtedness on the residence to the Bank secured by a Note and Deed of Trust. As of this date, the Bank has declined to assert any claim in the instant lawsuit.

Geotechnical Consultants, rendered a report regarding its investigation of slope stability for the residence. Burns Cooley also submitted reports regarding an analysis for a stability berm and an earthwork sample of fill material taken from the area of the residence.

On March 14, 1997, Plaintiffs submitted a claim to Defendant State Farm Fire and Casualty Company ("State Farm") for the damages to their residence. In their claim, Plaintiffs explained that the residence was fine for approximately four years but that after that time, cracks had begun to appear in the concrete and tile and that the problems and movement of the house had worsened over time.

On March 25, 1997, State Farm obtained from Thomas Rhoden a Request for Claim Service and Non-waiver of Rights ("Request and Non-waiver"). The Request and Non-waiver specifically set forth policy exclusions for earth movement and for settling/cracking.

On April 29, 1997, State Farm obtained a recorded statement from Plaintiffs regarding their loss. By that time, a berm had been constructed and anchors had been installed in an effort to stop the earth movement. On May 22, 1997, Plaintiffs received a report from D'Appolonia, Hayward Baker's consulting engineer, regarding the engineering evaluations for the creeping slope it had performed at the residence and a proposed remedial scheme. Hayward Baker presented proposals for wall foundation and slab releveling and for installing a Reticulated Mini-Pile Slope Stabilization System.

On August 4, 1997, State Farm denied Plaintiffs' claims based upon its investigation, the various reports submitted by Plaintiffs and several exclusions in the policy. On February 10, 1998, Plaintiffs filed a Complaint against State Farm alleging that State Farm wrongfully denied their claim for damage and loss to their home[2]. In the Complaint, Plaintiffs claim actual damages in the amount of $269,800 and extra-contractual

damages in the form of attorneys' fees in an undetermined amount. Plaintiffs have not claimed that the actions of State Farm in denying Plaintiffs' claim rise to a level of bad faith or that they are entitled to punitive damages.

Defendant brought the present Motion for Summary Judgment arguing that, as a matter of law, it is entitled to judgment because Plaintiffs' damages are not covered under the policy. The policy contains exclusions for damages caused by earth movement, settling/cracking, and defects in construction. Defendant contends that Plaintiffs' damages fall within all three exclusions and for this reason, the damages are not covered under the policy. Plaintiffs filed a Motion for Partial Summary Judgment asking the Court to find as a matter of law that their damages are not excluded but are covered under the policy.

## II. *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

---

**2.** This was not the only lawsuit for denial of coverage filed by Plaintiffs. Five months after State Farm denied their claim, Plaintiffs filed a suit in the Circuit Court of Hinds County against Home Buyers Warranty Corporation II and National Home Insurance Company alleging damages for wrongful denial of their claim on a

policy they held with Home Buyers Warranty Corporation II. The Court will refer to this lawsuit as the "Home Buyers lawsuit." In both the Home Buyers lawsuit and the Harkins lawsuit, Plaintiffs claim that the placement of fill associated with the construction of the residence has had a detrimental effect on stability of the slope.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

### III. *Analysis*

#### A. What caused the Plaintiffs' damages?

The parties are virtually in agreement regarding the cause of the damages to the residence. Professional engineer J.F Broadwater opined in his report to Plaintiffs that the residence experienced significant movement including the original patio sliding to the rear, the chimney moving to the rear, and movement which impacted the slab of the main house in the area of the master bath vanity and closet. The Broadwater report stated that Plaintiffs' damages, "may be due to lateral movement to rear, settlement and sloping of floors on the rear side of the residence." See Broadwater report, Exhibit "E" to Joint Submission of Undisputed Facts.

A report rendered by Burns Cooley stated that Plaintiffs' home had experienced apparent downhill movement. This report concludes that a 3–4 inch separation occurred over time at the juncture between the concrete drive and the slab-on-ground foundation of the two-story portion of Plaintiff's home. It further indicates that the addition was attempting to separate from the original home.

Burns Cooley tested the soils at various depths at the residence. In its report, Burns Cooley noted that subsurface soils encountered within the exploration depths of borings made for the investigation included fill materials and natural silty clays.

Plaintiffs claim that their engineers do not know what caused the earth movement they experienced. As mentioned earlier, Plaintiffs have brought suits against their builder and home warrantor claiming that placement of fill associated with the construction of their home has had a detrimental effect on stability of the slope. They also claim that construction of their home aggravated the stability of the slope and resulted in progressive formation of slickensided failure surface and in the initiation of slope movement.

D'Appolonia, Hayward Baker's consulting engineer, appears to concur with these allegations, opining in its written "Opinion of Cause of Slope Movements" that

placement of fill associated with the construction of the Rhoden residence has had a detrimental effect on the stability of the slope and the site, and that the original slope may have been only marginally stable prior to construction in its natural state...construction of the Rhoden residence aggravated the stability of the subject slope resulting in a progressive formation of a slickensided failure surface, and in the initiation of slope movements.

See D'Appolonia Opinion, Exhibit "N" to Joint Submission of Undisputed Facts. Plaintiffs have also submitted the affidavit of Thomas Rhoden and one of his engineers, David Dennis, to the effect that the shearing of the earth beneath the Rhoden house is much more serious than normal movements associated with the expansive clays in this area and would, eventually, if uncorrected, have caused a complete failure of the residence.

B. Are Plaintiffs' damages excluded under the policy?

Plaintiffs note that the policy is a typical homeowner's policy which provides coverage under an "all-risk form." The policy pays for any "accidental direct physical loss" to a building unless the loss is specifically excluded. The Court must determine whether the policy contains exclusions which bar coverage for Plaintiffs'. damages in this case.

1. The "Earth Movement" Exclusion

The first exclusion claimed by Defendant is the "earth movement" exclusion. This exclusion provides:

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

\* \* \* \* \* \*

b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion of lava flow, except as specifically provided in SECTION I—ADDITIONAL COVERAGES, Volcanic Action.

Defendant asserts that this exclusion excepts from coverage any loss which would not have occurred in the absence of earth movement, regardless of the cause of the loss and regardless of the circumstances of the loss (i.e., whether the loss occurs suddenly or gradually, is isolated or widespread, or arises from natural or external forces). Defendant avers that the record in this case clearly demonstrates that the losses that Plaintiffs sustained would not have occurred in the absence of earth movement. For this reason, Defendant claims that the earth movement exclusion bars coverage for Plaintiffs' claim.

Plaintiffs argue that under the "efficient proximate cause doctrine," or under the doctrine of "ejusdem generis," the Court should find coverage despite this exclusion. Applying the efficient proximate cause doctrine, Plaintiffs note that many courts have found coverage in spite of earth movement exclusions where the cause of the earth movement was not excluded under the all-risk form. *See State Farm Fire and Casualty Company v. Von Der Lieth*, 54 Cal.3d 1123, 2 Cal. Rptr.2d 183, 189, 820 P.2d 285 (1991) (where efficient proximate cause of insureds' property loss was negligence of third parties in failing to take proper measures to preserve mesa, which was covered under policy, rather than earth movement caused by naturally rising groundwater levels, which was excluded under policy, insured's claim was covered despite earth movement exclusion, because "[w]hen a loss is caused by a combination of covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss").

Although Mississippi courts have not specifically adopted the efficient proximate cause doctrine, Plaintiffs argue that the Court adopted the reasoning of the doctrine in the case of *New Hampshire Ins. Co. v. Robertson*, 352 So.2d 1307 (Miss.1977). In *Robertson*, the plaintiffs were insured under a comprehensive dwelling policy which covered all risks not excluded. The dwelling policy contained an exclusion similar to the earth movement exclusion in the present case. This exclusion provided,

THIS COVERAGE GROUP DOES NOT INSURE AGAINST LOSS (a) by wear and tear, deterioration, rust, mold, wet or dry rot, contamination, smog, smoke from agricultural smudging or industrial operations, mechanical breakdown; *settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;* ... (b) caused by, resulting from, contributed to or aggravated by earthquake, volcanic eruption, landslide, *or any other earth movement;* ...

*Robertson,* 352 So.2d at 1309 (emphasis added). Although the policy excluded coverage for damage caused by natural or exterior sources of water, the policy did cover damage caused by leaking plumbing. *Id.*

The insured made a claim for damages under the policy after a water leak caused by separation of a hot water line underneath her home resulted in settling and cracking of the patio, walls, floors and related damages. The defendant insurance company denied the claim based upon the settling and cracking exclusion. The Mississippi Supreme Court held that, despite the settling/cracking exclusion, the claim was covered. *Id.* at 1311.

In reaching this conclusion, the court noted that the provision excluding loss by settling and cracking appeared in the context of a clause excluding loss by wear and tear and deterioration. *Id.* at 1310. The court concluded that in this context, the policy appeared to exclude loss by settling and cracking due to ordinary swelling, settling or cracking as opposed to settling or cracking caused by some external agent. *Id.* The court also noted that the provision excluding loss by earth movement appeared in the context of a clause dealing with earthquakes, volcanic eruption and landslides. *Id.* The court concluded that in this context, the exclusion appeared to be limited to earth movement resulting from natural forces. *Id.* The court finally concluded that the policy was ambiguous and adopted the construction in favor of the insured, holding that since the cause of the loss was external and not from a natural force, the loss was covered. *Id.* at 1311.

Since Mississippi courts have not adopted the doctrine of "efficient proximate cause," the Court declines to apply the doctrine in this case. With regard to whether the court's analysis and holding in *Robertson* bind this Court, Defendant argues, and the Court agrees, that the language in the policy in the present case is different than the language in *Robertson.* Where the court in *Robertson* found the policy to be ambiguous such that the Court had to deduce the meaning and extent of the settling/cracking and earth movement exclusions from the context of these exclusions, in the present case, the policy is not ambiguous as to the extent and meaning of the "earth movement" exclusion.

The preface to the "earth movement" exclusion specifically states that the policy does not insure under any coverage for loss which would not have occurred in the absence of one or more of the subsequently listed events, one of which is earth movement, regardless of the cause of the event, whether the event occurs suddenly or gradually, or whether the event involves isolated or widespread damage. Additionally, the policy specifically states that losses occurring because of the subsequently listed events, one of which is earth movement, are excluded regardless of whether they arise from natural or external forces, or occur as a result of any combination of natural or external forces. This qualifying clause was not present in the policy in *Robertson.*

■ The doctrine of "ejusdem generis" (meaning "of the same kind, class, or nature" BLACK'S LAW DICTIONARY, p. 464 (5th Ed.1979)) is not applicable in this case. The policy describes "earth movement" as including, but not limited to, "earthquake, landslide, mudflow, sinkhole, subsidence and erosion." Under the doctrine of "ejusdem generis," where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. *Cole v. McDonald,* 236 Miss. 168, 186, 109 So.2d 628, 637 (1959). Under such a construction, as urged by Plaintiff, the Court would interpret the exclusion only to include earth movement of either an earthquake, landslide, mudflow, sinkhole, subsidence or erosion, and not earth movement of any other type or manifestation.

■ The problem with such a construction in this case is that it is confronted by the clear language of the exclusion, which states that "earth movement includes *but is not limited to* " (emphasis added) the listed natural disasters. The doctrine of "ejusdem generis" is only applied when a contract is found to be ambiguous. *Yazoo Properties v. Katz, Besthoff Number 284, Inc.,* 644 So.2d 429, 432 (Miss.1994). Because the "earth movement" exclusion in this case explicitly states that earth movement is not limited to earth-

quake, landslide, mudflow, sinkhole, subsidence or erosion, and because the policy states that damages from earth movement are excluded regardless of whether the earth movement arises from natural or external forces, there is no need for the Court to apply the doctrine of "ejusdem generis" to determine the meaning of the "earth movement" exclusion.

It is undisputed that, whether caused by the negligence of Plaintiffs' contractor in its placement of fill soil in the construction of Plaintiffs' home or by some other condition, Plaintiffs' damages are a result of earth movement[3] underneath the residence. As such, they fall within the "earth movement" exclusion of the policy and are not covered damages. Because as a matter of law, Plaintiffs' damages are not covered under the policy, Defendant is entitled to summary judgment.

2. The "Settling/Cracking" Exclusion

Although the Court has found Plaintiffs' damages are excluded under the "earth movement" exclusion, the Court will briefly address the other exclusions that Defendant claims apply in this case. The "settling/cracking" exclusion provides:

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widestread damage, arises from natural or external forces, or occurs as a result of any combination of these:

\*      \*      \*      \*      \*      \*

1. settling, cracking, shrinking, bulging, or expansion of pavements, walls, floors, rods or ceilings.

See Policy, Exhibit "C" to Joint Submission of Undisputed Facts, pp. 10–12.

For the same reasons that the "earth movement" exclusion applies, the Court finds that the "settling/cracking" exclusion applies

to bar coverage for damages Plaintiffs claim as a result of the cracking of the foundation of the residence. These damages are excluded regardless of whether the loss occurs suddenly or gradually or as a result of natural or external forces.

3. The "Defect in Construction" Exclusion

This exclusion provides:

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss of any other cause of the loss:

\*      \*      \*      \*      \*      \*

b. defect, weakness, inadequacy, fault of unsoundness in:

(1) planning, zoning, development, surveying siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

However, we do insure for any resulting loss from items a. and b. unless the resulting loss is itself a Loss Not Insured by this Section.

See Policy, Exhibit "C" to Joint Submission of Undisputed Facts, pp. 10–12. Defendant argues that any damages Plaintiffs claim as a result of their builder's negligence falls within this exclusion. Plaintiffs argue that this exclusion covers loss which *consists* of defective construction but does not exclude loss which results from defective construction.

---

**3.** The parties variously characterize this earth movement as a "landslide," a "shearing movement resulting from sliding within slickensided, weathered Yazoo clays," "slope movements," and "slide movements." These are distinctions without a difference for purposes of this analysis. All of these conditions fall within the definition of earth movement in that they are all manifestations of "the sinking, rising, shifting, expanding or contracting of earth."

The Court notes that even adopting the construction urged by the Plaintiff, under the terms of the policy, the resulting loss still would not be covered. The "construction defect" exclusion specifically states that the policy does insure for loss resulting from defective construction unless the resulting loss is a loss not insured by that section. The Court has already found that Plaintiffs' loss is a loss not insured by the policy because the loss falls within the "earth movement" and "settling/cracking" exclusions. For this reason, the loss resulting from the allegedly defective construction work is not covered under the policy.

### IV. *Conclusion*

There are no genuine issues of material fact in dispute in this case. The Court finds that the damages to Plaintiffs' residence at 2236 Sheffield Drive were a result of earth movement and as such are excluded from coverage under the clear language of the policy. Because Plaintiffs' damages are not covered under the policy, Defendant is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [27–1] should be and hereby is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [33–1] should be and hereby is denied.

A Final Judgment will be entered in accordance with this Opinion and Order.