David L. EAKER, Sr. and Deborah Eaker, Plaintiff,

v.

STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, Defendant.

No. Civ.A.1:00–CV–12RG.

United States District Court, S.D. Mississippi, Southern Division.

Sept. 17, 2001.

Robert P. Myers, Jr., Owen & Galloway, PLLC, Gulfport, MS, for plaintiff.

Billy W. Hood, Allen, Vaughn, Cobb & Hood, Gulfport, MS, for defendant.

## ORDER GRANTING MOTION OF DEFENDANT FOR SUMMARY JUDGMENT AND DENYING MOTION OF PLAINTIFFS TO AMEND

GUIROLA, United States Magistrate Judge.

BEFORE THE COURT is the Motion of the Defendant, State Farm Fire and Casualty Insurance Company ("State Farm") for Summary Judgment [Docket No. 23–1]. Also pending before this Court is the Motion of the Plaintiffs, David L. Eaker, Sr., and Deborah Eaker (the "Eakers") to Amend [Docket No. 28–1]. Having carefully considered said motions, the briefs and arguments of the parties, as well as the record before it and the relevant legal authority, it is the opinion of the Court that the Motion of the Defendant State Farm for Summary Judgment is well taken and should be granted and the Motion of the Plaintiffs, the Eakers, to Amend, is not well taken and will be denied.

### I. FINDING OF FACTS

The Plaintiffs, David and Deborah Eaker, reside at 10330 Shorecrest Road in Biloxi, Mississippi, and did so reside in September 1998. The Eakers purchased two insurance policies with State Farm. The first, Policy Number 24–99–3976–0, was a special form 3–Homeowner's Policy (Homeowner's Policy, Exhibit "A").[1] The second, Policy Number 24–RA–6098–3, was a Preferred Risk Flood Insurance Policy (Flood Policy, Exhibit "B").

On September 28, 1998, Hurricane Georges caused damage to the Eaker home. The Plaintiffs submit that on or about September 29, 1998, that they contacted State Farm by calling an "800" number advertised as the Storm Damage Claims Number for State Farm. (Exhibit "1", ¶ 4, to Plaintiffs' Response to Motion for Summary Judgment, Affidavit of Deborah Eaker; Exhibit "2", ¶ 4, Affidavit of David L. Eaker, Sr.). Deborah Eaker spoke to an individual who represented herself as Evette Richards; Deborah Eaker submits that she provided Ms. Richards with a detailed account of the damages sustained by the Eakers' residence, including flood damages, and was informed that a State Farm adjuster would be dispatched and would contact the Eakers within 5–7 days. (Exhibit "1", ¶ 4, Affidavit of Deborah Eaker.) Deborah Eaker submits that Ms Richards advised her that State Farm would investigate the claim, that no further action was required by the Eakers

---

1. The exhibits referenced are those filed with the Defendant State Farm's Motion for Summary Judgment unless otherwise indicated.

with regard to their claim, and that State Farm was on notice of the claim. (*Id.*)

On or about October 15, 1998, after not having any contact with State Farm representative relative to hurricane damage, Deborah Eaker again contacted State Farm by calling the State Farm Command Center in Gulfport, Mississippi. (Exhibit "1", ¶ 5.) An appointment was made for October 22, 1998, for an adjuster to examine the Eakers' storm damages. (*Id.*) A State Farm representative did not appear on October 22, 1998, but ultimately, after several more phone calls by the Eakers, an appointment to view the premises was set for November 3, 1998, by Mr. Brad LeBonde of State Farm. (Affidavit of LeBonde, Exhibit "C") (Exhibit 2, ¶ 6). On this date, LeBonde inspected the premises and settled on-site with the insured. (Exhibit "C"); the claim was paid under the Eakers' Homeowner's Policy and the file was closed by LeBonde. (Exhibit "C"). The Plaintiffs submit that LeBonde indicated that he was not authorized to make adjustments for flood claims, but that he would inform the appropriate representatives of State Farm and that someone with State Farm would contact them to make an appointment to adjust the flood loss claim. (Exhibit "2", ¶ 6); Mr. Eaker submits that LeBonde indicated that no additional action was required of the Eakers except to wait for State Farm to contact them. (*Id.*)

In March of 1999, the Eakers contacted State Farm and made further claims with State Farm as they submit they were never again contacted by State Farm. (*Id.*) State Farm representatives claimed no knowledge of the Eakers' flood loss claim. (Exhibit "2", ¶ 8). An appointment to view the premises was scheduled on March 18, 1999. Mr. Steve White of State Farm met with the Eakers to discuss claimed damages to the home. (Affidavit of White, Exhibit "D"). The Eakers informed White that the home had settled and some water pipes had broken from flooding in Hurricane Georges. (Exhibit "D"). White inquired why it took so long for the Eakers to file the flood loss claim. Mr. Eaker indicated that he had notified State Farm and that he had been, or should have been, put on a waiting list. (Exhibit "D"). Eaker also indicated that he and his wife had family and health problems and were not concerned with the settlement problem until recently whereby they contacted State Farm. (Exhibit "D"). As of March 18, 1999, the Eakers had not filed a "Proof of Loss" for any flood loss claim. (Affidavit of White, Exhibit "D").

On March 27, 1999, State Farm employed the services of Top Hat Chimney Sweeps to inspect the fireplace, and received a report stating, "unsafe cracks in fireplace ... received from [the] Hurricane." (Top Hat Chimney Sweeps Safety Inspection Report, Exhibit "E").

State Farm concluded its investigation of the Eaker's flood claim and determined that damages to the interior of the home amounted to $550.00. (Exhibit "F"). Because the damage was less than the $750 deductible, the Eakers were informed by State Farm that no payment would be made under the flood policy. (See correspondence dated March 30, 1999, Exhibit "G").

On April 22, 1999, legal counsel for the Eakers, Robert P. Myers, Jr., wrote Mr. Steve White advising State Farm that he had been retained by the Eakers to assist them in resolving their dispute for claimed damages resulting from Hurricane Georges. (Myers' correspondence of April 22, 1999, Exhibit "H"). Mr. Myers forwarded to State Farm a report dated April 13, 1999, from Carl D. Germany, an architect who had been retained by the Eakers to inspect their home. (Exhibit "I"). Germany related settlement and foundation

problems to flood water from Hurricane Georges and estimated the cost of leveling the home at approximately $89,750.00. (Germany correspondence of April 13, 1999, Exhibit "I").

In response, Steve White contacted Rob Myers, Jr., and advised him that someone from State Farm would again inspect the property in light of Carl Germany's recommendation for leveling the property. Shortly thereafter, Mr. White left the Mississippi Gulf Coast and the claim was assigned to Jamye Woody. (Affidavit of Steve White, Exhibit "D").

As a result, on July 12, 1999, Jamye Woody of State Farm arranged for Vanderbrook Engineering to inspect the dwelling and determine what damages, if any, were flood related. (Affidavit of Jamye Woody, Exhibit "J"). The investigation and inspection were conducted on July 19, 1999. Vanderbrook Engineering issued a report indicating that settlement was not related to the flood waters of Hurricane Georges but instead, due to long term settlement of the home. (Vanderbrook Report, Exhibit "L").

On August 12, 1999, Jamye Woody forwarded a letter to the Eakers' attorney, Robert P. Myers, Jr., informing him that, upon inspection and investigation, the damage to the home was caused by ground settlement, and not covered under the flood policy[2]. (Exhibits "O" and "B"). Following August 12, 1999, Jamye Woody was no longer the claim representative working on the Eakers' flood claim. The claim was subsequently handled by Jack Collins ("Collins").

On September 30, 1999, the Plaintiffs' attorney, Robert Myers, Jr., wrote to Collins of State Farm, inquiring whether State Farm would provide coverage under the homeowner's policy for the settlement to the Eakers' home. (Exhibit "N").

On October 8, 1999, Collins wrote Plaintiffs' attorney denying coverage under the homeowner's policy number 24–99–3976–0. (Exhibit "P"). Collins also sent correspondence to David Eaker on October 12, 1999, explaining State Farm's denial of the claim. (Exhibit "Q").

The Plaintiffs filed suit on January 6, 2000, in the United States District Court alleging that State Farm had breached contractual provisions under both the homeowner's and flood policies.

Finally, it is undisputed that the Eakers never filed a "Proof of Loss" with State Farm under the flood policy. (See Exhibits "D", "J" and "M").

## II. CONCLUSIONS OF LAW

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Federal Rule of Civil Procedure 56(c). When a proper motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Federal Rule of Civil Procedure 56(e). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Eber v. Harris County Hosp. Dist.,* 130 F.Supp.2d 847 (S.D.Tex.2001). This

---

**2.** The Flood Loss Policy clearly and unambiguously excludes:

   B. **Losses from other casualties, including loss caused by:**

    1. "Theft, fire, windstorm, wind, explosion, earthquake, land sinkage, landslide, destablization or movement of land resulting from the accumulation of water in subsurface land areas, gradual erosion, or any other earth movement except such mud slides (i.e., mud flows) or erosion as is covered under the peril of flood."

(SFIP, Art. 3, ¶ B, p. 4).

Court has jurisdiction of this matter pursuant to 42 U.S.C. § 1983 and pendent jurisdiction of state law claims.

## A. The Flood Insurance Policy

State Farm moves the court to dismiss the Plaintiffs' claim under the Flood Insurance Policy, Number 24–RA–6098–3, as State Farm is merely appearing for the purpose of this portion of the motion in its "fiduciary"[3] capacity as the "fiscal agent of the United States"[4] and at the expense of the U.S. Treasury.[5] Language to this effect is found on the first line of the Standard Flood Insurance Policy (herein SFIP), "Issued Pursuant to the National Flood Insurance Act of 1968, or Any Acts Amendatory Thereof (Hereinafter Called the Act), and Applicable Federal Regulations in Title 44 of the Code of Federal Regulations, Subchapter B" (Exhibit "B"). State Farm also makes this declaration in the introductory language of its policy,

> "[w]e insure you .... based upon ... [a]ll the terms of this policy, the National Flood Insurance Act of 1968, as amended, and Title 44 of the Code of Federal Regulations."

(Exhibit "B", Insuring Agreement, p. 1).

The Plaintiffs submit that although State Farm Fire and Casualty Company did sell and service an insurance flood policy owned by the Plaintiffs, it does not enjoy immunities and other defenses afforded to the United States government which underwrites the flood insurance policy; specifically, as the Plaintiffs have move to amend to add state law claims of negligent misrepresentation on the part of State Farm and they submit that State Farm does not enjoy such immunities and defenses as might be afforded the United States. The Court has addressed such assertions by the Plaintiffs as set forth further herein and finds them to be without a basis for recovery in the case *sub judice.*

■ Congress passed the National Flood Insurance Act in 1968 to provide previously unavailable flood insurance protection to property owners in flood-prone areas at rates that are at or below actuarial levels. 42 U.S.C. § 4001 et seq.; 44 C.F.R. § 59.2. Flood insurance policies are issued directly by the Federal Emergency Management Agency ("FEMA") or through private insurers known as Write–Your–Own Companies ("WYO"), acting as "fiscal agents" of the federal government. 44 C.F.R. 61.13(f), 62.23(a), (g). *See, e.g., Gowland v. Aetna,* 143 F.3d 951, 952 (5th Cir.1998). "Although FEMA uses the services of a private corporation as a fiscal servicing agent, the Federal Insurance Administration ('FIA'), acting under the authority of FEMA, is ultimately responsible for handling all National Flood Insurance Policies." *Howard v. FEMA,* 960 F.Supp. 1095 (S.D.Miss.1996).

The National Flood Insurance Act established a pool of private insurance companies which undertook the administrative implementation of the program, the objective of which was, and to this day is, to provide affordable flood insurance. In return, the private insurance companies receive a percentage of the premiums paid and are exposed to a minimum risk of loss because the Federal Government, as guarantor, pays all allowable claims. See *Eddins v. Omega Insurance Co.,* 825 F.Supp. 752, 753 (N.D.Miss.1993).

National Flood Insurance Policy ("NFIP") premiums are deposited in the National Flood Insurance Fund in the Treasury, after deducting fees and costs.

---

**3.** 44 C.F.R. Pt. 62.23(f).

**4.** *Gowland v. Aetna,* 143 F.3d 951, 953 (5th Cir.1998).

**5.** *Van Holt v. Liberty Mutual Insurance Co.,* 163 F.3d 161 (3rd Cir.1998).

42 U.S.C. § 4071(d). Flood insurance claims are paid from United States Treasury funds through letters of credit, and money paid on claims by WYO insurers is reimbursed by FEMA from the Treasury. 44 C.F.R. Pt. 62, App. A, Art. IV. *See Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 165 (3rd Cir.1998), ("regardless of whether FEMA or a WYO company issues a flood insurance policy, United States Treasury funds pay the insureds' claims").

■ A suit against a private insurer providing insurance coverage under the SFIP is a suit against the United States Federal Government. (See history of private insurers involvement in NFIP under Part A and Part B of the Act, 42 U.S.C. § 4071–72, described in *In re Estate of Lee*, 812 F.2d 253, 255 (5th Cir.1987)). Moreover, the terms and conditions of all federal flood insurance policies have been fixed in the form of the Standard Flood Insurance Policy, and no provision may be altered, varied or waived other than with the express consent of the government. 44 C.F.R. § 61.4, 61.13, and Pt. 61 Appendix A(1) (SFIP Dwelling Form). In addition, Article 9, Paragraph D of the SFIP, p. 12, specifically provides: "[t]his Policy cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator."

Thus, State Farm is afforded all defenses of the Federal Government. Moreover, State Farm is powerless to alter the terms of the flood policies issued on behalf of the United States Government. It is the Federal Government, through the SFIP, which sets forth each of the terms and conditions of the insurance contract, including the "Requirements In Case of Loss"[6] and "Conditions For Filing a Lawsuit."[7] State

---

6. **Requirements in Case of Loss:** Should a **flood** loss occur to your insured property, you must:
   1. Notify us in writing as soon as practicable;
   2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it; and
   3. Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the **policy** signed and sworn to by you and furnishing us with the following information:
      a. The date and time of the loss;
      b. A brief explanation of how the loss happened;
      c. Your interest in the property damaged (for example, "owner") and the interest, if any, of others in the damaged property;
      d. The **actual cash value** or replacement cost, whichever is appropriate, of each damaged item of insured property and the amount of damages sustained;
      e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property;
      f. Details as to any other contracts of insurance covering the property, whether valid or not;
      g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the **policy** was issued;
      h. Details as to who occupied any insured **building** at the time of loss and for what purpose; and
      i. The amount you claim is due under this **policy** to cover the loss, including statements concerning:
         (1) The limits of coverage stated in the **policy;** and
         (2) The cost to repair or replace the damaged **property** (whichever costs less).
   (Exhibit "B", Art. 9, ¶ J, p. 14).

7. **Conditions for Filing a Lawsuit:** You may not sue us to recover money under this **policy** unless you have complied with all the requirements of the **policy.** If you do sue, you must start the suit within 12 months from the date we mailed you notice that we have denied your claim, or part of you claim, and you must file the suit in the United States District Court of the district in which the insured

Farm seeks dismissal of the Plaintiffs' flood claims in its motion for summary judgment based upon these two provisions.

### 1. The Strict Terms of The SFIP; "Proof of Loss" under the Policy

■ It is well established under federal law that an insured must strictly comply with the terms and conditions of an insurance policy issued pursuant to a congressionally mandated program. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The doctrine of strict compliance is a cornerstone to interpretation of the SFIP. *See, e.g., Wagner v. FEMA*, 847 F.2d 515 (9th Cir. 1988); *Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386, (9th Cir.2000); *Gowland v. Aetna*, 143 F.3d 951 (5th Cir.1998), (requiring strict compliance with SFIP proof of loss requirement). In fact "[u]nder FEMA regulations, strict adherence is required to all terms of [the] SFIP. 44 C.F.R. § 61.13(a), (d), (e)." *Forman v. FEMA*, 138 F.3d 543 (5th Cir.1998). *See also Howard v. FEMA*, 960 F.Supp. 1095 (S.D.Miss.1996).[8]

The Plaintiffs submit that State Farm should be estopped from asserting as a defense to the Plaintiffs' claim the 60 day proof of loss requirement and submit that a genuine issue of material fact exists as to whether State Farm negligently misrepresented to the Plaintiffs that it was not necessary for the Plaintiffs to take any other action in regard to their flood loss claim other than notifying State Farm of their loss.

In *Howard v. FEMA, supra*, the court emphasized the rigid policy requirements

in reference to the proof of loss provisions. During the coverage period, the Plaintiff's home was flooded due to rising creek waters. The Plaintiff, through her insurance agent, filed a Notice of Loss informing the NFIP that she sustained a flood loss. An investigation of the home was conducted by an adjuster who apparently informed the Plaintiff that she needed to get some estimates concerning the damage to her home.

Although FEMA notified the Plaintiff on two separate occasions concerning the SFIP requirement of a proof of loss, the Plaintiff never submitted one. The Plaintiff argued that FEMA should be stopped from requiring compliance with the terms of the SFIP policy. The Court refused to adopt the estoppel argument, adopting the approach of the Ninth Circuit set forth in *Wagner v. FEMA*, 847 F.2d 515 (9th Cir. 1988). *See Howard*, 960 F.Supp. at 1102.

The *Wagner* decision involved Plaintiffs who had filed an untimely proof of loss. The Plaintiffs asserted that FEMA should be stopped from asserting as a defense the Plaintiff's failure to file a timely proof of loss because FEMA did not initially assert this requirement as the reason for the denial of the Plaintiff's claims. While the District Court agreed, concluding estoppel was appropriate in such a circumstance, the Ninth Circuit disagreed, citing the test for estoppel as:

> A party seeking to raise estoppel against the government must establish "**affirmative misconduct** going beyond mere negligence"; even then, "estoppel will only apply where the government's

property was located at the time of loss. (Exhibit "B", Art. 9, ¶ R, p. 16).

**8.** In *Howard v. FEMA*, 960 F.Supp. at 1102, the District Court found that FEMA was not estopped from denying coverage although FEMA had not sent a proof of loss form to the

insured nor had they informed the Plaintiffs that proof of loss was required. "Even though the claims adjuster may have observed damage to [Plaintiff's] home caused by the flood, [Plaintiff] was still obligated under the provisions of the SFIP to submit a sworn statement of the amount of her loss." *Id.*

wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." ... "A mere failure to inform or assist does not justify application of equitable estoppel."

*Wagner*, 847 F.2d at 519 (emphasis added).

In *Forman v. Federal Emergency Management Agency*, 138 F.3d 543 (5th Cir. 1998), the Court rejected the same estoppel argument that is being presented by the Plaintiffs in this case. In *Forman*, the Court noted that payments awarded under the Federal Emergency Management Agency (FEMA)—issued flood insurance policies are a "direct charge on the public treasury," for purposes of the Appropriations Clause's prohibition against enforcing an assertion of estoppel against the Government by a claimant seeking money from Public Treasury contrary to a statutory appropriation. U.S.C.A. Const. Art. 1 § 9, cl. 7; National Flood Insurance Act of 1968 § 1306, as amended, 42 U.S.C.A. § 4013; 44 C.F.R. Pt. 61 App. A(1), Art. IX, ¶ J(3). As noted in *Forman* in pertinent part:

[2] Appellants contend in the alternative that FEMA should be stopped from asserting as a defense their failure to meet the Proof of Loss filing requirement. We disagree. Appellants' claim ignores the Supreme Court's recent holding, made under the Appropriations Clause of the Constitution, Art. I § 9, cl. 7, that the judiciary is powerless to uphold "an assertion of estoppel against the Government by a claimant seeking [money from the Public Treasury contrary to a statutory appropriation]." *OPM v. Richmond*, 496 U.S. 414, 434, 424, 110 S.Ct. 2465, 2476, 2471, 110 L.Ed.2d 387 (1990). The Court recognized that " 'not even the temptations of a hard case' will provide a basis for ordering recovery contrary to the terms of [a] *regulation*, for to do so would disregard 'the duty of all courts to ob-

serve the conditions defined by Congress for charging the public treasury.' " *Richmond*, 496 U.S. at 420, 110 S.Ct at 2469 (quoting *Federal Crop Ins. Corporation v. Merrill*, 332 U.S. 380, 385–86, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947)) (emphasis added).

[3] Payments awarded under FEMA-issued flood insurance policies are indeed "a direct charge on the public treasury." *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir.1987). FEMA, acting well within its statutory rule-making authority, 42 U.S.C. § 4013, has established that a claimant must file a Proof of Loss containing certain specified information before his claim may be considered. 44 C.F.R. Pt. 61 App. A(1), Art. IX, ¶ J(3). As established above, appellants failed to satisfy this regulatory requirement in this case. In such circumstances, there can be no estoppel of the Proof of Loss requirement, for we cannot estop "the conditions defined by Congress for charging the public treasury." *Richmond*, 496 U.S. at 420, 110 S.Ct at 2469 (quoting *Merrill*, 332 U.S. at 385–86, 68 S.Ct. at 3–4). Appellants, therefore, have not raised any genuine issues of material fact foreclosing judgment as a matter of law in FEMA's favor. The judgment of the district court is affirmed accordingly.

*Id.* at 545–46.

Furthermore, in *Gowland v. Aetna*, 143 F.3d 951 (5th Cir.1998), the Court again explicitly refused to apply the Doctrine of Estoppel against Aetna who was asserting the same "Proof of Loss" arguments that are being advanced by State Farm in this case. The Gowlands contended that the doctrines of Estoppel and Equitable Estoppel barred Aetna from asserting the Proof of Loss Requirement as a defense since Aetna was aware that their camp had been damaged by the flood and took steps

which lead them to believe that their claim was being routinely processed. The Gowlands notified Aetna the day after the flood and adjusters were sent to inspect the property. Aetna and the Gowlands continually negotiated the insurance claim. However, the Gowlands never provided a complete, Proof of Loss statement.

In refusing to apply estoppel against Aetna, the Fifth Circuit held as follows:

Although the Gowlands' policy was written by Aetna, a private insurance company, payments made pursuant to that policy are "a direct charge on the public treasury." [9] When Federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution. "Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury." [10] To date, the Supreme Court has not upheld an estoppel claim resulting in the payment of money out of the treasury.

.    .    .    .    .

We find that the theories of substantial compliance, waiver, and equitable estoppel are inapplicable to the facts presented herein. While this result may seem harsh in light of the Gowlands' ongoing negotiations with Aetna, we must remind that the National Flood Insurance Program is federally subsidized and enables consumers to obtain flood insurance which virtually would be impossible to purchase in the marketplace. Requiring the Gowlands to turn

square corners when dealing with the Treasury "does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." [11]

*Id.* at 955 (footnotes included).

In *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (*per curiam*), the United States Supreme Court ruled that oral misinformation provided by a government employee does not provide a basis for estoppel against the Government.

The Plaintiffs submit that *Reeves v. Guiffrida,* 756 F.2d 1141 (5th Cir.1985), supports the Plaintiffs' estoppel argument. In *Reeves,* the Fifth Circuit reversed a district court's granting of the defendant FEMA's Motion to Dismiss based upon the insured's failure to comply with the 60 day sworn proof of loss requirement of the flood policy. In reversing and remanding for a trial upon the merits, the court stated that one who attempts to invoke the doctrine of estoppel against the government for acts of its agents bears a heavy burden of proof. *Reeves,* 756 F.2d at 1143.

Even though the 5th Circuit has refused to apply estoppel to a WYO arising out of claims handling under the SFIP, *Gowland, supra,* discussed a four-prong estoppel analysis as it relates to "affirmative misconduct" of government employees, as discussed further herein. As noted in *Gowland, supra,*

The elements of estoppel are that (1) the party to be estopped was aware of the facts; (2) the party to be stopped intended its act or omission to be acted upon; (3) the party asserting estoppel

9. *In re Estate of Lee,* 812 F.2d 253, 256 (5th Cir.1987).

10. *Office of Personnel Management v. Richmond,* 496, U.S. 414, 425, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).

11. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947).

did not have knowledge of the facts; and (4) the party asserting estoppel reasonably relied on the conduct of the party to be stopped to his substantial injury. 143 F.3d at 954.

The Plaintiffs never specifically alleged "affirmative misconduct" in their Complaint filed against State Farm; however, since the issue was raised by the Plaintiffs in their Response, the Court will analyze as follows that any claim by the Plaintiffs asserting "affirmative misconduct" by State Farm, cannot support an application of the estoppel doctrine:

*(1) the party to be stopped was aware of the facts;*

*(2) the party to be stopped intended its act or omission to be acted upon;*

■ According to the Affidavit of Steve White, State Farm was not aware of any flood loss claim being presented until March 1999. (Defendant's Exhibit "D") Mr. White met with the Eakers and inspected the premises for claimed flood damages to the home on March 18, 1999. When Mr. White inquired from Mr. Eaker "why it had taken him so long to file this claim under the flood policy," Mr. Eaker told Steve White that while he had notified State Farm, he "waited to file this claim under the flood policy because he was not concerned with the settlement problem until recently when he contacted State Farm." (Defendant's Exhibit "D"). Furthermore, in Fred Vanderbrook's Engineering Report, dated August 5, 1999 (Defendant's Exhibit "L"), Vanderbrook noted that "Mr. Eaker indicated that due to personal problems experienced during the

time of the hurricane, he did not file a claim for these damages until sometime in 1999."

As stated in David Eaker's affidavit (Exhibit "2", ¶ 8), "State Farm representatives disavowed any knowledge of the Eakers' flood loss claim".[12] Considering this statement in the light most favorable to the Plaintiffs, since State Farm was unaware of the Eakers' desire to present a flood loss claim until after the 60 day Proof of Loss requirement had expired, State Farm could not have intended their alleged act or omission to be acted upon. *Gowland,* 143 F.3d 951 (5th Cir.1998).[13] Moreover, the Plaintiffs have offered no evidence that State Farm intended that the Plaintiffs not comply with the sixty (60) day deadline for filing a Proof of Loss.

*(3) the party asserting estoppel did not have knowledge of the facts*

The Plaintiffs cannot prove this element to support a finding of affirmative misconduct resulting in the application of the estoppel doctrine. The Eakers are charged with knowledge of the Proof of Loss requirement contained in the SFIP issued by State Farm; such is a material fact.

The Eakers' actions in this case, appear to indicate that they were unaware of the need for the Proof of Loss under the SFIP (until State Farm filed its Motion for Summary Judgment on the issue). However, the Eakers are charged with knowledge of the Proof of Loss requirement. It is stated in the first paragraph of the SFIP—"[r]ead the policy carefully. The coverage

---

**12.** The Affidavits of Steve White and Fred Vanderbrook serve as explanation of why State Farm was not aware of the Eakers' flood loss claim within the 60 day time frame after the hurricane.

**13.** In *Maloney v. FEMA,* 1996 WL 626325 (Oct. 24, 1996), the Plaintiff alleged that the adjustors "lulled" him into believing a Proof

of Loss was unnecessary. "However, the Plaintiff failed to establish a genuine dispute of whether the government intended for Plaintiff to miss the sixty (60) day deadline for filing a Proof of Loss—no reasonable trier of fact could find that the government intended to 'lull' Plaintiff into neglecting to file the Proof of Loss." *Id.* at 3.

provided is subject to limitations, restrictions and exclusions." A reading of the policy would have allowed one to discovered the need for the sworn Proof of Loss to be filed within 60 days. "Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Accordingly, the SFIP provisions are binding on all who seek to come within the purview of the SFIP, regardless of the actual knowledge of what is in the policy or of the hardship resulting from innocent ignorance. *Id.* "[Requiring] Men to turn square corners when they deal with the Government" is not a "callous outlook." *Id.* "It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Id.*

As the Eakers are charged with knowledge of the SFIP according to *Merrill*, estoppel is inapplicable. *See Gowland v. Aetna*, 143 F.3d 951 (5th Cir.1998).

*(4) the party asserting estoppel reasonably relied on the conduct of the party to be estopped to his substantial injury.*

This Court does not find that the Plaintiffs could have reasonably relied on the conduct of State Farm to their substantial injury as the Plaintiffs' claims, including those which are newly asserted alleging "affirmative misconduct", ignore the text of the Proof of Loss section contained in State Farm's flood policy. If the Plaintiffs had simply read their policy, they would have discovered that the policy language further negates their estoppel argument being advanced. In the provision styled

"Requirements in Case of Loss", the following language is found:

> The insurance adjuster whom we hire to investigate your claim *may* furnish you with a Proof of Loss form, and she or he may help you to complete it. However, this is a matter of *courtesy* only, and you must still send us a Proof of Loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

> . . . . .

> The adjuster is not authorized to approve or disapprove claims or tell you whether your claim will be approved by us.

(Exhibit "B", State Farm Policy, p. 14, ¶ 16) (emphasis added).

State Farm submits that the Plaintiffs are attempting to argue that State Farm is liable for "affirmative misconduct" by their relying on State Farm for not providing a "courtesy." Such reliance was not based upon a legal duty owed to the Eakers, but only upon, based upon the applicable case law, a "courtesy". Therefore, the Plaintiffs did not "reasonably" rely on the conduct of State Farm to their substantial injury.[14] *Gowland*, 143 F.3d 951 (5th Cir. 1998) (failure to satisfy standard for estoppel criteria number 4, *supra*).

The failure of the Plaintiff to establish a genuine issue of the material facts regarding any "affirmative misconduct" precludes the application of the doctrine of estoppel to State Farm in this instance. In the matter *sub judice*, it is uncontradicted that the Eakers never filed a proof of loss as specifically required under the SFIP. It is immaterial that State Farm received notice of the flood claim and actually conducted an investigation to determine the extent of damage to the Eaker's home

---

**14.** In *Maloney, supra,* the Plaintiffs failed to allege affirmative misconduct on the part of the government. The court stated *"[a] mere failure to inform or assist does not constitute affirmative misconduct."* Id. at 3. (Citing *Wagner*, 847 F.2d at 519; *Jackson v. National Flood Insurers Association*, 398 F.Supp. 1383, 1388–89 (S.D.Tex.1974)). (Emphasis added).

allegedly resulting from Hurricane Georges.[15] The SFIP unequivocally requires that the insured submit a proof of loss within 60 days after the loss, "which is the [insured's] statement as to the amount [the insured] is claiming under the policy signed and sworn to by [the insured] . . ." (SFIP, Art. 9, ¶ J, p. 14). The Plaintiffs failed in their obligation to file a proof of loss and as such, all claims presented under the flood policy are barred.

### 2. *Conditions for Filing a Lawsuit*

■ The Plaintiffs' failure to comply with the strict requirements of the SFIP mandates dismissal of all counts relating thereto as set forth above. *See Forman v. FEMA*, 138 F.3d 543 (5th Cir.1998) (SFIP must be strictly construed and enforced); *Howard v. FEMA*, 960 F.Supp. 1095 (S.D.Miss.1996); *see also Wagner v. FEMA*, 847 F.2d 515 (9th Cir.1988) (judgment reversed in favor of insurer); *Nabhan v. FEMA*, 1 F.Supp.2d 91, 96 (D.Mass.1998); *Exim Mortgage Banking Corp. v. Witt*, 16 F.Supp.2d 174 (D.Conn. 1998); *Diamond v. FEMA*, 689 F.Supp. 163 (E.D.N.Y.1988); *Holeman v. FEMA*, 699 F.Supp. 98 (N.D.Tex.1988).

Furthermore, numerous courts, most notably *Wagner*, discussed *supra*, specifically hold that the proof of loss requirement of the SFIP is a condition precedent to filing a lawsuit. By way of implication, the *Howard*, *Forman*, and *Gowland* courts undeniably support such a proposition. *See generally Wagner v. FEMA*, 847 F.2d 515, 518 (9th Cir.1988) (SFIP's procedural requirements constitute condition precedent to a waiver by the federal government of its sovereign immunity); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir.1998) (insured's failure to provide complete, sworn proof of loss relieves insurer of obligation to pay what might otherwise be a valid claim); *Phelps v. FEMA*, 785 F.2d 13, 15

(1st Cir.1986) (reliance on assurances by NFIP representative that plaintiff was not required to do anything further was unreasonable); *Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386 (9th Cir.2000) (court lacks power to award money remedy to flood claimant who fails to comply with 60–day proof of loss requirement).

Plaintiffs have not complied with their duties under the flood policy and are thereby barred from suing to recover on the policy. The SFIP language clearly mandates compliance with the policy as a condition to bringing any lawsuit: "[y]ou may not sue us to recovery money under this policy unless you have complied with all the requirements of the policy." (SFIP, Art. 9, ¶ R, p. 16). *See also Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386 (9th Cir.2000); *Ambassador Beach Condominium Association, Inc. v. Omaha Property and Casualty Insurance Company*, 152 F.Supp.2d 1315 (N.D.Fla.2001). Furthermore, the Plaintiffs never received an express written waiver of the 60 day "Proof of Loss" provision in their policy from the Federal Insurance Administrator. 44 C.F.R. §§ 61.4, 61.13, and Pt. 61 Appendix A(1) (SFIP Dwelling Form), and Article 9, ¶ D of the SFIP, p. 12 (Exhibit "B").

The Plaintiffs' failure to submit a proof of loss of their claim means that they have not complied with the policy requirements and, for that reason, they have not met the condition required for bringing an action to recover under the policy. Because Plaintiffs have not met this condition precedent, they may not maintain this action, and all causes of action under the flood policy should be dismissed.

### B. Federal Preemption of State Law Claims and Plaintiffs' Motion to Amend

■ The Plaintiffs submit that even if their claims are time barred for failure to

---

**15.** See *Wagner v. FEMA*, 847 F.2d 515 (9th   Cir.1988).

timely file a proof of loss claim, which they do not concede, at a minimum their claims against State Farm relating to misleading statements or misrepresentations should not be barred. The Plaintiffs submit that in *Davis v. Travelers Property and Casualty Co.,* 96 F.Supp.2d 995, 999 (N.D.Cal. 2000), *quoting Spence v. Omaha Indemnity Insurance Co.,* 996 F.2d 793 (5th Cir. 1993), the Court held that state law claims against fiscal servicing agents are not preempted by federal law and further that fiscal servicing agents do not enjoy the immunity of the United States Government in all circumstances relating to flood loss claims. *Davis,* 96 F.Supp.2d at 1003. These claims of the Plaintiffs are the subject of the Plaintiffs' Motion to Amend. The Defendant submits that all state law claims against State Farm for extra contractual and punitive damages under the flood policy are preempted and prohibited by the National Flood Insurance Act.

In this jurisdiction, the courts have held that punitive damages were not recoverable against a flood insurer, who had issued a policy under the National Flood Insurance Program, for its allegedly arbitrary failure to pay a claim. *See Eddins v. Omega Insurance Company,* 825 F.Supp. 752 (N.D.Miss.1993).

In *Eddins, supra,* the Court (Senter, J.) held that "Federal Law" controls cases brought under the National Flood Insurance Act of 1968. In doing so, the Court noted:

> Since the Flood Insurance Program is a child of Congress, conceived to achieve the policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law. Thus, a prevailing plaintiff in a suit on a flood insurance policy issued pursuant to the National Flood Insurance Act is not entitled to recover the statutory penalty and attorney's fees allowed by state insurance law for arbitrary denial of coverage.

*Id.* at 753.

The Court further held that "a private insurer does not have a pecuniary incentive to deny a claim under a policy issued through the National Flood Insurance Act," noting "any claim would be paid by the Federal Government" pursuant to *Fenton v. Federal Insurance Administrator,* 633 F.2d. 1119 (5th Cir.1981). The Court further held that "allowing punitive damages to be recoverable under the National Flood Insurance Act would simply defeat the philosophy behind the program." *Id.* at 753.

The Defendant distinguishes *Davis v. Travelers Property and Casualty Co.,* 96 F.Supp.2d 995, 999 (N.D.Cal.2000), and notes that *Spence v. Omaha Indemnity Insurance Co.,* 996 F.2d 793 (5th Cir.1993) dealt with policy procurement and not claims handling. In *Davis,* the court dismissed the plaintiff's SFIP claims and acted in absolute disregard for Federal law. Specifically, the Court dismissed the plaintiff's SFIP claims against the WYO pursuant to *Flick v. Liberty Mutual Fire Ins. Co.,* 205 F.3d 386 (9th Cir.2000), but held in abeyance the Plaintiff's state law claims, seeking insight from FEMA as to whether the NFIP immunizes WYO insurers for misleading conduct in the processing of a SFIP claim. FEMA responded supporting Traveler's position that "such extra-policy state-law claims are preempted and are barred by the Appropriations Clause." *Id.* at 998. However, the court did not defer to the authority and advice of FEMA and failed to acknowledge the full weight of *Flick, supra. See also, Cohen v. State Farm Fire and Casualty,* 68 F.Supp.2d 1151 (C.D.Cal.1999).

■ As the United States Supreme Court stated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), in pertinent part:

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

> .    .    .    .    .

> ■ If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Id.* at 842–44, 104 S.Ct. 2778. *See also I.N.S. v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2290, 150 L.Ed.2d 347 (June 25, 2001); *U.S. v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (June 18, 2001).

More recently, in *Scherz v. South Carolina Insurance Company,* 112 F.Supp.2d 1000 (C.D.Cal.2000), the *Davis* court is criticized for its failure to defer to FEMA and for not recognizing *Flick* as controlling authority. The *Scherz* court ruled that the provisions of the SFIP are to be strictly construed and enforced and that conflict preemption precluded an insured's state law claim against a WYO insurer. *Citing Geier v. American Honda Motor Co.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

In *Jamal v. Travelers Lloyds of Texas Insurance Company,* 97 F.Supp.2d. 800 (S.D.Tex.2000), an insured homeowner sued the WYO insurer alleging breach of contract, bad faith, and violations of the Texas Insurance Code. The Plaintiff sought to remand the case to state court arguing that "NFIA does not preempt state law claims and any interpretation of the NFIA is, at best, tangential to the outcome of the case." *Id.* at 802.

The Court rejected this argument, concluding:

> pursuant to statute, federal courts have exclusive jurisdiction over disputes arising under SFIPs [standard flood insurance policies], and, thus, jurisdiction is lacking in state court.... Hence, remand is not warranted.

*Id.* at p. 806.

Moreover, in *McCormick v. Travelers Insurance Company,* 86 Cal.App.4th 404, 103 Cal.Rptr.2d 258 (January 22, 2001), the California Court of Appeals, noting the case to be one of first impression, affirmed a lower court's dismissal of a lawsuit against *Travelers,* stating:

> we conclude that the federal courts have exclusive jurisdiction over all of the claims asserted in the McCormicks' first

amended complaint. This exclusive jurisdiction encompasses all claims regardless of whether they plead contract, tort, or state statutory remedies and damages, and regardless of whether the named defendant is the FEMA or a WYO insurer.

*Id.* at 269.

As such, all state law claims that have been asserted by the Plaintiffs in their notice pleading or motion to amend, seeking damages for extra contractual and punitive damages, are judicially preempted and prohibited by federal law pursuant to the provisions of the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001 *et. seq.,* the SFIP policy issued by State Farm, as well as all applicable federal regulations.[16]

### C. The Homeowner's Policy

Additionally, State Farm submits that it is entitled to Summary Judgment on all flood claims made under State Farm Homeowner's Policy, Number 24–99–3976–0. (Exhibit "A"). The Defendant submits that the Policy provides for certain coverages related to the Plaintiffs' home, but specifically excludes the coverage which the Plaintiffs are seeking.

1.  *Interpretation of Insurance Contracts in Mississippi: Plain Meaning Governs When Unambiguous and Clear*

The Defendant submits that "[u]nder Mississippi contract law, if an insurance policy is unambiguous, its terms must be given their plain meaning and enforced as written." *Bankers Multiple Line Insurance Co. v. Pierce,* 20 F.Supp2d 1004, 1006

(S.D.Miss.1998); (citing *American States Ins. Co. v. Nethery,* 79 F.3d 473, 475 (5th Cir.1996)). See also *American Guarantee and Liability Insurance Co. v. 1906 Co.,* 129 F.3d 802, 805 (5th Cir.1997). The only time an insurance contract is not given its plain meaning occurs when the policy is ambiguous, at which time the policy will be interpreted in the light most favorable to the insured. *Id.* (citing *Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658, 662 (Miss.1994)). See also *Lewis v. Allstate Insurance Co.,* 730 So.2d 65, 68 (Miss. 1998) (citing *Paul Revere Life Ins. Co. v. Prince,* 375 So.2d 417, 418 (Miss.1979)) (under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written). *See also Sennett v. United States Fidelity and Guaranty Co.,* 757 So.2d 206, 212 (Miss.2000) (quoting *Hare v. State,* 733 So.2d 277, 281 (Miss.1999)) (insurance policies which are clear and unambiguous are to be enforced according to their terms as written and the plain terms of the insurance contract should be binding and controlling).

2.  *The Applicable Homeowner's Policy Exclusions*

In the matter *sub judice,* there is no issue as to any material fact that the Plaintiffs' claim for coverage under their Homeowner's Policy is excluded. The policy language clearly and unequivocally excludes coverage for the settlement of the foundation, the claim which the Plaintiffs are asserting. Three specific policy provi-

---

**16.** FEMA has recently revised the SFIP and included therein a discussion of the preemptive nature of the SFIP to state law claims. *See* 65 Fed.Reg. 60767 (Oct. 12, 2000); (¶ IX titled "What Law Governs," in which the policy clearly and unambiguously states "[t]his policy and all disputes arising from the han-

dling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.) and Federal common law)." 65 Fed.Reg. 60777 (Oct. 12, 2000).

sions set forth exclusions applicable to the Plaintiffs' claim for coverage.

### a. The "Earth Movement" Exclusion

■ The Plaintiffs' Homeowner's Policy specifically excludes coverage for damage caused by "earth movement". This exclusion states:

> **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence, and erosion. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in (**SECTION I–ADDITIONAL COVERAGES, Volcanic Action**).

(Exhibit "A", Section I–Losses Not Insured, Art 2.(b), p. 10). This policy exclusion clearly provides that the coverage claimed by the Plaintiffs is not provided by the Homeowner's Policy they purchased from State Farm.

### b. The "Water Damage" Exclusion

■ The Plaintiffs' Homeowner's Policy also specifically excludes coverage for water damage and explains the meaning of "water damage" in the policy. This exclusion clearly states:

> **Water Damage,** meaning:
>
> (1) **flood,** surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not;
>
> (2) water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or
>
> (3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

(Exhibit "A", Section I–Losses Not Insured, Art 2.(c), p. 10) (emphasis added). Once again, the language in the policy clearly excludes the damages claimed by the Plaintiffs.

### c. The "Settling/Cracking" Exclusion

■ Finally, the Plaintiffs' Homeowner's Policy specifically excludes damages resulting from settling and cracking in specific circumstances. The policy language sets forth:

> We do not insure for any loss to the property described in Coverage A [Dwelling] which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> .    .    .    .    .
>
> 1. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings.

(Exhibit "A", Section I–Losses Not Insured, Art 1., p. 9, 10). This policy language is clear and unambiguous, and undeniably sets forth that State Farm does not insure for loss "directly and immediately caused by" settling of foundation "whether the loss occurs suddenly or gradually."

### 3. The Rhoden Decision

In *Rhoden v. State Farm Fire & Casualty Company*, 32 F.Supp.2d 907

(S.D.Miss.1998), *aff'd* 200 F.3d 815 (5th Cir.1999), the insureds brought a breach of contract suit against State Farm for the insurer's refusal to cover damage caused by earth movement beneath their home. The insureds made a claim under their Homeowner's Policy after they began to notice cracks in their driveway, bathroom tile, and separation between the new addition to their home and the main house, and a sticking door.[17] The insureds explained that after four years, cracks began to appear throughout the residence and movement had occurred.

State Farm denied the insureds' claim based upon its investigation, various reports the insureds had submitted, and several exclusions in the policy. The insureds filed suit alleging breach of contract and extra-contractual damages. State Farm filed a motion for summary judgement asserting exclusions under the policy, namely the "earth movement" and "settling/cracking" exclusions. The insureds filed a motion for partial summary judgment arguing for coverage and asserting the doctrine of efficient proximate causation and "ejusdem generis".

The insureds asserted that under the doctrine of "efficient proximate cause" the Court should find coverage despite the exclusion, arguing that many other Courts have adopted such an approach. The insureds cited as authority the case of *State Farm Fire and Casualty Company v. Von Der Lieth*, 54 Cal.3d 1123, 1131, 2 Cal.

Rptr.2d 183, 189, 820 P.2d 285, 291 (Cal. 1991), in which the Court concluded "[w]hen a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss." See *Rhoden*, 32 F.Supp.2d at 911. The Court (Barbour, J.), finding that Mississippi courts have not specifically adopted the efficient proximate cause doctrine, declined to apply said doctrine in *Rhoden*.[18]

Next, using "ejusdem generis", the insureds asserted that "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *Rhoden*, 32 F.Supp.2d at 912 (citing *Cole v. McDonald*, 236 Miss. 168, 186, 109 So.2d 628, 637 (Miss.1959)). The insureds further urged that "the Court ... interpret the exclusion only to include earth movement of either an earthquake, landslide, mudflow, sinkhole, subsidence or erosion, and not earth movement of any other type or manifestation." *Id.* In response, the Court concluded that using this doctrine as the insureds urged would be inconsistent with the clear language of the policy's "earth movement" exclusion. *Id.*

"For the same reasons that the 'earth movement' exclusion applies, the Court finds that the 'settling/cracking' exclu-

---

**17.** This claim was actually filed after the Plaintiff's had filed suit against the contractor for having built a faulty foundation and structures upon said foundation which cause movement of the earth resulting in the damage complained. *Rhoden*, 32 F.Supp.2d at 908.

**18.** The Court was not persuaded by the insureds argument that the court should adopt the approach of *New Hampshire Ins. Co. v. Robertson*, 352 So.2d 1307 (Miss.1977), a case in which the Mississippi Supreme Court

found the policy ambiguous and decided in favor of coverage under the policy because the settling and cracking exclusion clause appeared in the context of a clause excluding loss by wear and tear deterioration and the provision excluding earth movement appeared in the context of a clause dealing with earthquakes, volcanic eruption and landslides. Neither of these provisions were applicable to the insureds' claim for damages caused by a water leak caused by separation of a water line underneath the home.

sion applies to bar coverage for damages Plaintiffs claim as a result of the cracking of the foundation of the residence. These damages are excluded regardless of whether the loss occurs suddenly or gradually or as a result of natural or external forces."

*Id.* at 913. Accordingly, just as in *Rhoden,* a factually similar case to that of the matter at bar, the specific policy exclusions spelled out in the Plaintiffs' Homeowner's Policy applies and the Plaintiffs' claims under the policy are barred.

### 4. The Expert Findings Support Exclusion And Dismissal

The expert opinions rendered in this case support exclusion and dismissal of all claims under the State Farm homeowner's policy.

Carl D. Germany, Plaintiffs' expert, conducted an inspection of the Eaker home on April 13, 1999, almost seven months after Hurricane Georges. In Mr. Germany's letter of April 13, 1999, he states "I believe this settlement was caused from the level of water around the house resulting in saturation of the soil beneath the house foundation." (Exhibit "I"). Such a finding is not contradictory to and can support State Farm's assertion that it is entitled to summary judgment on all claims relating to "settlement" damage under the State Farm homeowner's policy.

Fred Vanderbrook, one of Defendant's experts, concluded that "the vast majority of the differential settlement of this house occurred over a long period of time". (Exhibit "L"). Furthermore, after suit was instituted in this case, State Farm retained Rimkus Consulting Group to inspect the Eaker home. As reflected in their report of April 27, 2000, Rimkus concluded that the damage to the interior and exterior finish material of the Eaker home resulted from differential movement of the foundation. Furthermore, the differential foundation movement occurred in response to the differential movement of the soil underlying and supporting the foundation. It was further concluded that the differential soil movement was the result of long-term consolidation of the soil as a result of natural compaction of the soil due to the application of the load of the residence. (Exhibit "T").

For the purpose of this Motion, all of the expert reports before the Court from the Plaintiffs and Defendant inevitably lead to the same conclusion; *i.e.,* that it is undisputed that the structural damage to the Eaker home resulted from settlement and shifting of the foundation, a loss specifically excluded under the State Farm homeowner's policy. Accordingly, State Farm is entitled to summary judgment on all claims alleged to have been sustained under State Farm's homeowner's policy.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the is the Motion of the Defendant State Farm for Summary Judgment [Docket No. 23–1], be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion of the Plaintiffs, David L. Eaker, Sr., and Deborah Eaker, to Amend [Docket No. 28–1], be and is hereby **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that as all the claims and the rights and liabilities as to all of the parties have been adjudicated that a Final Judgment be entered in this cause.